[Civ. No. 5434.   Third Appellate District.—November 1, 1935.]

ANNA W. DABNEY, Respondent, v. LOUISE E. DABNEY
et al., Administrators, etc., Appellants.

Pease & Dolley for Appellants.

Newby & Newby for Respondent.

PLUMMER, J.—This action was brought by the plaintiff to recover the amount due upon a certain contract in writing, and also to establish the plaintiff's right to a contingent claim against the estate of Joseph B. Dabney, deceased, and to have sequestered from the estate of Joseph B. Dabney, deceased, a sum sufficient to insure the payment of the amount of the contingent claim. Claims covering the amount alleged to be due, and also covering the contingent claim were presented to the administrators of the estate of Joseph B. Dabney, deceased, and by them rejected.

The record shows that prior to the twenty-first day of December, 1917, the plaintiff was a widow, and was employed by Joseph B. Dabney to care for his invalid brother, Thomas L. Dabney, and on the date just mentioned Joseph B. Dabney, for the purpose of paying the plaintiff for the care and comfort given by her to the invalid brother of the deceased, executed and delivered to the plaintiff a certain written instrument whereby he covenanted and agreed to pay the plaintiff $100 per month during her lifetime, terminating only by conditions therein mentioned. This writing is in the words and figures following, to wit:

"December 21st, 1917

"Mrs. Anna Wartman,
    "2314 East 4th Street,
        "Long Beach, California.
"My dear Mrs. Wartman:—
    "I hereby ratify and confirm oral conversation between yourself and me on December 18th, 1917, in which I agreed that in case of your marriage to my brother, Mr. Thomas L. Dabney, I will, in consideration of the kind and helpful care that you have given him, and the continuance thereof, pay you One Hundred ($100.00) Dollars each month during his lifetime so long as you and he live together, and after his death, I will continue to pay you One Hundred ($100.00) Dollars per month as long as you remain his widow.
                    "Yours very truly,
"JBD–E                    JOSEPH B. DABNEY."

Thereafter, following the execution of said agreement, the plaintiff and Thomas L. Dabney were married, and on the 28th day of June, 1923, Joseph B. Dabney, in lieu of the agreement hereinbefore set forth, executed and delivered to the plaintiff a certain other written instrument, as follows, to wit:

"Los Angeles, California,
"June 14, 1923.

"For a valuable consideration to me in hand paid, receipt whereof is hereby acknowledged, I hereby agree and bind myself, my heirs, executors and administrators to pay to Anna W. Dabney on or before the 15th day of each month, beginning with July, 1923, the sum of One Hundred Dollars ($100.00) per month, during the entire time of her life, and I further agree that I will make provision in my will by which after my death, if it should occur before the death of Anna W. Dabney, that my estate shall pay to her the aforesaid sum of One Hundred Dollars ($100.00) per month as long as she lives, provided that in lieu of making the aforesaid provision in my will, I may make a trust provision by which the aforesaid sum of One Hundred Dollars ($100.00) shall be paid to her after my death as long as she lives.

"JOSEPH B. DABNEY"

The considerations set forth in these agreements were admitted by the answer, and also, the allegation that the second agreement was executed in lieu of the first, as alleged in the complaint, was not controverted by the answer.

Under and by virtue of the two agreements just mentioned, the court found that there became due to the plaintiff the sum of $18,200, upon which there had been paid only the sum of $16,910, leaving the sum of $1290 due thereon at the date of the death of Joseph B. Dabney, which occurred on or about the eleventh day of September, 1932. The court further found the amount which has become due by virtue of the contract dated June 14, 1923. The record shows that on account of the contract which we have set forth, advance payments were made in the sum of $5,410.

On the seventh day of July, 1927, Joseph B. Dabney and Louise E. Dabney, his wife, entered into an agreement with the plaintiff for the purchase of certain real estate owned by the plaintiff, situate in the city of Long Beach, alleged to be of great value, which we do not find denied in the answer.

This agreement of purchase provided for the payment to the plaintiff of the sum of $350 per month, and is in the words and figures following, to wit:

"Los Angeles, California,
"July 7th, 1927.

"This memorandum of agreement Witnesseth, that for a valuable consideration to us in hand paid, receipt whereof is hereby acknowledged, we, each for himself or herself, hereby agree and bind ourselves to pay to Anna W. Dabney, on or before the 15th day of each and every month, beginning with July 15th, 1927, during her lifetime and as long as she lives, the sum of Three Hundred and Fifty Dollars ($350.00) per month, and in case of our death before the death of Anna W. Dabney this agreement shall be a binding obligation on our estates, and upon our heirs, executors and administrators.

"In witness whereof we, each for himself and herself, have hereunto put our hands and seals on this the 7th day of July, 1927.

"JOSEPH B. DABNEY
"LOUISE E. DABNEY."

All of the agreements were acknowledged before a notary public.

It is alleged in the complaint, and not denied in the answer, and found by the court, that the value of the estate left by Joseph B. Dabney, deceased, was in excess of the sum of $500,000. Upon the latter agreement the sum of $350 per month was paid by Joseph B. Dabney until his decease. Since that time payments have been continued to be made by Louise E. Dabney, and no judgment has been entered against her as an individual.

The court made findings in favor of the plaintiff to the effect that all of the allegations of the plaintiff's complaint are true; that plaintiff is entitled to recover the amount found due on the second agreement set forth herein; and also was entitled to have sequestered and set aside from the estate of Joseph B. Dabney, deceased, a sufficient sum of money, mentioned in the judgment, to insure the payment to the plaintiff of the amount found to be due her by reason of the contingency contained in the claims set forth herein.

By reason of the fact that only $350 per month was paid by Joseph B. Dabney and Louise E. Dabney to the plain-

tiff after the execution of the contract in July, 1927, it is argued that the second contract set forth herein was canceled or abandoned by mutual consent. As against this contention the respondent sets forth that the amount of money paid on account of the first two contracts exceeded the monthly payments in the sum of $5,410, and therefore the plaintiff was in no position to claim any indebtedness on account thereof until just a few months preceding the death of Joseph B. Dabney.

There is no testimony in the record showing any abandonment of the second contract providing for the payment of $100 per month for the care and custody of the brother of Joseph B. Dabney, deceased, nor is there anything in the record showing that such care and attention was not necessary to be given to the invalid brother of Joseph B. Dabney, deceased, during all the time subsequent to July, 1927. The considerations of the contracts were entirely different. The first two contracts were both executed and delivered for the purpose of insuring proper care and attention being given to the invalid brother of the deceased. The third contract was given for the purpose of buying valuable property from the plaintiff by Joseph B. Dabney, deceased, and Louise E. Dabney, his wife. While the value of the property has not been called to our attention, the record does show that there has been paid on account of the contract relating to the purchase of said property, the sum of $23,450.

In behalf of their contention that the contracts relating to the care and attention to be given to the invalid brother were canceled and abandoned by mutual consent or conduct, the appellant calls our attention to 6 California Jurisprudence, page 304, and the case of *Loomis Fruit Growers' Assn.* v. *California Fruit Exchange,* 128 Cal. App. 265 [16 Pac. (2d) 1040]. Those cases are inapplicable for the simple reason that there is absolutely nothing doubtful or uncertain upon the face of either the contract executed in 1917 or 1923. Those citations establish that it is only where the terms of the contracts are ambiguous or uncertain that the court will look to the conduct of the parties in order to arrive at their intention.

The trial court found that there had been no abandonment or cancellation of the contracts, other than that the second agreement was given in lieu of the first, making provision for the giving of attention and care to the invalid brother.

In view of the fact that the plaintiff was not in any position to ask for any payment on account of said contracts by reason of the advances made by Joseph B. Dabney, deceased, until a few months before his death, it appears to us that the finding of the trial court to such effect is supported by the testimony.

This finding is also supported by the record, showing an entirely different consideration for the respective contracts. As we have said, the considerations mentioned in the pleadings for the respective contracts were not denied in the answer filed by the appellants.

■ We find no error in the exclusion of evidence offered by the appellants, the question asked of the witness Philleo, as to whether he found a record of any payments of $100 to Anna Dabney after the date of the execution of the contract in 1927, being made by Joseph B. Dabney, now deceased. The court sustained an objection to this question. The record shows that all moneys that had been paid by the deceased had already been testified to, and it was admitted that no money had been paid on the second contract after the date of the execution of the contract signed by Joseph B. Dabney and Louise E. Dabney. As we have said, the record showed an overpayment of $5,410.

■ The second objection to the exclusion of testimony offered by the defendants is likewise without merit. The appellants offered in testimony a letter written by Anna W. Dabney, dated December 6, 1927, addressed to a witness by the name of Stein. An examination of this letter shows that no mention was made of either the second contract or the third contract set forth herein. All the letter purports to show is an inquiry about monthly payments, whether the checks would be sent to a certain bank, as the plaintiff desired to check out something like $1,000. The letter itself shows that it is of no materiality.

■ The next objection propounded by the appellants is that no action will lie on the contract of 1927, to establish a claim thereunder, or for the sequestration of assets. The point is also made that there is no showing of dissipation of assets, and that payments on said contract are being made by the other obligor thereon, Louise E. Dabney. We do not need to review all the authorities cited, *pro* and *con*, on this question. All we need to do is to call attention to two cases

cited by the appellants which establish beyond question that such an action will lie, in addition to citing section 953 of the Probate Code.

In the case of *Sime* v. *Hunter*, 50 Cal. App. 629 [195 Pac. 935] (petition for hearing in the Supreme Court denied), we find the following language in syllabus number one, which is supported by the decision of the court, to wit: "When a claim not yet due has been rejected by the representatives of an estate without cause, the court may upon a showing of necessity therefor, entertain a suit in equity to establish the claim and sequester sufficient funds of the estate to meet the payment when it becomes due." After citing a number of cases where it seems to be held that such an action may not be maintained before maturity, the court in its opinion shows the following language: "However, in the case of *Miller* v. *Miller*, 171 Cal. 269 [152 Pac. 728], it is clearly intimated that in a suit in equity, setting forth the condition of the estate, the ability of the personal representatives to provide for future payments, and the necessity of creating a fund to meet the demands of the claimant, the court may, in accordance with section 1648 of the Code of Civil Procedure, create a fund to meet the demands, if the claim is established as one absolute, except only as to the time of payment." ■ Where the claim has been rejected and the administrators are proceeding with the administration of the estate, and unless prevented by legal proceedings, would make distribution of the estate, we can perceive no logical reason why equity may not entertain an action to establish the contingent claim and make provision for its payment, where the estate is of such value as to justify the court in making such provision. We do not very well see any logical reasoning to the effect that such a proceeding may not be maintained at any time, as under the probate law, unless an action is begun within a certain time after the rejection of a claim, it is barred. (Sec. 714, Probate Code.)

The very question which we are considering here, we think has been determined by the Supreme Court in the case of *Newman* v. *Burwell*, 216 Cal. 608 [15 Pac. (2d) 511]. We quote therefrom the following: "It is next urged that it cannot now definitely be determined that the child will reach her majority. Citing, *Miller* v. *Miller, supra.* Respondents therefore contend that the claim here sought to be established

is of such a contingent nature that the court below cannot by any possibility determine that it will be in amount if established or absolute. The cited case offers no obstacle to the conclusion above reached, for the decision therein recognizes 'that the equity side of the court may be invoked to protect the owners of contingent claims which will mature after the period within which distribution may take place'. The opinion points out that the complaint there before the court, was one based solely 'upon a rejected demand for moneys not yet due' and wherein 'there is neither pleading or prayer with reference to the condition of the estate, the ability of the defendants to provide for future payments nor the desirability of creating a fund to meet the annual demands of the plaintiffs'. The complaint in the present case, as already stated, is one in *equity* to establish the claim there asserted and to impound a fund with which to pay off the same as the instalments thereof accrue. It contains all the necessary allegations referred to in the Miller case, *supra,* and is therefore immune from demurrer on the ground therein considered. In this connection see, also, *Verdier* v. *Roach,* 96 Cal. 467, 475–479 [31 Pac. 554].''

■ The record shows that the fourth objection urged by appellants, save and except as to the demand for $1690, that no claim was presented to the administrators, is without merit. The contingent claim was presented and rejected. It shows the amount that has been paid and the amount that is due every month. It shows the monthly payments claimed by the plaintiff, and that the amount which the plaintiff claims should be sequestered from the estate of the deceased in order to insure payments, etc.

We think the claim as presented sufficiently complies with the rule of the Supreme Court in the case of *Etchas* v. *Orena,* 127 Cal. 588 [60 Pac. 45], cited by appellants, where it is said: ''The executor was entitled to have the claim presented in sufficiently intelligent form to enable him to pass upon it legally.'' We might quote further from the opinion, but this sentence shows the foundation of the court's decision. The claim presented in this case was sufficient in form to give the administrators of the estate of Joseph B. Dabney, deceased, full information as to what was claimed. No demurrer was interposed, and our attention has not been called to any place in the record where objection was made by ap-

pellants either to the form or sufficiency of the claim as presented by the plaintiff.

It is finally argued that the contract of 1927 does not bind the estate of Joseph B. Dabney, deceased, on the theory that the obligation is joint and not several. In view of the language used in the agreement we do not very well perceive why this contention is presented. The language of the agreement in the beginning is: "We, each for himself or herself, hereby agree to bind ourselves to pay Anna W. Dabney," etc., and concludes as follows: "In case of our death before the death of Anna W. Dabney, this agreement shall be a binding obligation on our estates, and our heirs, executors and administrators." Thus, the contract by its express terms, is several as well as joint. Both obligors were benefited in the purchase of the real estate from the plaintiff, and both of them bound themselves to pay that sum. The estate of Joseph B. Dabney is bound, just as the estate of Louise E. Dabney would be bound. Section 1659 of the Civil Code reads: "Where all the parties who unite in a promise receive the same benefit from the consideration, whether past or present, their promise is presumed to be joint and several." Section 1660, *supra,* reads: "A promise made in the singular number but executed by several persons is presumed to be joint and several." We may also cite the cases of *Hurlbut* v. *Quigley,* 180 Cal. 265 [180 Pac. 613], and *Gummer* v. *Mairs,* 140 Cal. 535 [74 Pac. 26].

The fact that Louise E. Dabney is making payments does not in anywise relieve the representatives of Joseph B. Dabney, deceased, from the obligation incurred by Joseph B. Dabney during his lifetime. Both obligors in the 1927 contract are bound. The estates of both are bound. Whether there should be contribution between the two obligors or their estates is not material.

Lastly, we find no evidence of novation in the record. No argument has been presented as to any excess in the amount ordered sequestered to insure payment upon the contingent contract, and it must be assumed that the calculations of the court are substantially correct.

We have reviewed herein but few of the large number of cases cited by the appellants, for the simple reason that the record in this case does not correspond with the record of the questions presented in the cases cited by the appellant. Their

applicability to the questions presented is not questioned, but as the questions presented by the record before us do not set forth testimony justifying their application, the review of such cases would be of no practical value.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 30, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 30, 1935.