[Civ. No. 22984. Second Dist., Div. One. Aug. 21, 1958.]

L. A. JONES, as Guardian, etc., Respondent, v. MURRAY H. ROBERTS, as Executor, etc., Appellant.

Robert Sikes for Appellant.

Mason, Kinley & Wallace and William Kinley for Respondent.

WHITE, P. J.—Plaintiff L. A. Jones, as guardian of the Estate of Roderic Allan Stellar, an incompetent, instituted this action against defendant Murray H. Roberts, as executor of the estate of Robert W. Stellar, deceased, for moneys allegedly due to the incompetent as a third party beneficiary under the terms of a property settlement agreement between the decedent Robert W. Stellar during his lifetime, and Marjorie Stellar, the parents of the incompetent.

The complaint contained two causes of action, the second of which was dismissed by stipulation at the pretrial hearing. The remaining first cause of action alleged that in connection with a property settlement agreement dated December 26, 1951, the aforesaid parents of the incompetent contracted that the father, Robert W. Stellar, would support the incompetent

son and furnish him with certain hospital and institutional care. The answer denied generally the allegations of the complaint other than the execution and validity of the property settlement agreement.

The record reflects that the incompetent son is presently confined in the State Hospital at Camarillo, California, suffering from a mental disorder known as schizophrenia. That this affliction will make it impossible for the incompetent son to support and maintain himself and will require his hospitalization and medical care for the duration of his life; that his life expectancy is conceded to be 42 years.

The terms of the aforesaid property settlement agreement insofar as here pertinent are as follows:

". . .; Husband further agrees to pay all nurses, doctors, institutional and hospital expenses reasonably necessary in the treatment and care of said minor child (Roderic Allan Stellar) (parenthesis added) until he attains the age of twenty-one years. After the said minor attains the age of twenty-one years, should it be necessary to incur doctor, nurse, hospital or institutional expenses in order to treat and care for said child, Husband shall pay the first $300.00 per month on account of said expense and any overage shall be borne by the parties jointly."

Following execution of this agreement and subsequent divorce of the parents of the incompetent, his father remarried. The latter died on April 15, 1954, leaving as his heirs and legatees his widow Shirley Stellar, a son Charles A. Stellar, his incompetent son Roderic Allan Steller, his posthumous daughter Deborah Stellar, and his brother Arnold T. Stellar. The estate of the deceased father Robert W. Stellar is solvent and financially able to pay the claim which is the subject of this litigation, having gross assets of approximately $350,000 and distributable assets of between Ninety and One Hundred Twenty Thousand Dollars.

Following trial before the court, sitting without a jury, findings were made, and insofar as necessary for the disposition of this appeal, are as follows:

"XIII. That the necessary expenses to provide the said Roderic Allan Stellar, the incompetent herein, with doctors, nursing care, institutional or hospital care, to treat and care for said incompetent, is the sum of Three Thousand Twenty Dollars ($3,020.00) annually. *That said sum is made up of the following items of expense: $1,800.00 annually for hospitalization in Camarillo State Hospital; $250.00 annually for*

*clothing; $250.00 annually for medical examinations; $360.00 annually for expenses and fees of a trustee to administer the trust funds of said incompetent; and the sum of $360.00 annually for the increased costs of hospitalizing said incompetent during his forty-two year life expectancy.* (Emphasis added.)

"XIV. That the cost of hospitalizing said incompetent in the Camarillo State Hospital has increased by the sum of $16.00 per month since January 1, 1955, and that further increases in the cost of hospitalizing said incompetent during his life expectancy of forty-two years are reasonably certain to occur."

.    .    .    .    .    .    .    .    .    .    .    .    .

"XXI. That to provide Roderic Allan Stellar, the incompetent herein, with the funds necessary for his care in the sum of $3,020.00 annually, as found in Finding No. XIII herein, for a period of forty-two years, the life expectancy of said incompetent, will require the sum of $69,670.80 drawing interest at the rate of 3¼% per annum."

Judgment was rendered in favor of plaintiff, directing that defendant executor pay to plaintiff guardian the sum of $69,670.80 to be held in trust by plaintiff guardian for the use of the incompetent.

The judgment further provided, "That in the event the said Roderic Allan Stellar shall, prior to the expiration of his estimated forty-two years of life expectancy, die or be restored to capacity, then the corpus of said trust funds remaining in the hands of the trustee shall at that time forthwith be distributed in the same manner and to the same persons and in the same respective proportions as shall be made in the decree of final distribution in the Estate of Robert W. Stellar, Deceased, . . . now pending in this court." This appeal is prosecuted by defendant executor from the judgment.

As indicated by the findings, the court estimated that the amount necessary to provide the incompetent with medical and institutional care is the sum of $3,020 annually. Using this figure as a basis, extended over a period of 42 years, the agreed life expectancy of the incompetent, the court concluded that the sum of $69,670.80 earning 3¼ per cent interest would be required. The annual figure of $3,020 was calculated by the court as follows:

(1) The sum of $1,800 annually for hospitalization and care in the State Hospital at Camarillo;

(2) $250 annually for clothing;

(3) $250 annually for medical examinations;

(4) $360 annually for expenses and fees of a trustee to administer the trust funds in the judgment;

(5) $360 annually for increased costs of hospitalizing the incompetent in the future.

Appellant concedes the validity of the first item of $1,800 for hospitalization and care at the State Hospital, but challenges the remaining four annual figures, contending that the findings thereon are without evidentiary support.

As a prelude to his argument, appellant asserts that, ". . . this is a simple *legal* action to recover moneys due on a contract. Accordingly, the trial court may not, in this case, sit as an equity judge would in a domestic relations matter and set certain figures for support or care which in his opinion were equitable. *The trial court here may only award the plaintiff such moneys as the plaintiff had, by a preponderance of the evidence, shown he was entitled to under the strict provisions of the contract."*

With this contention we cannot agree. This case involves the power of the court under section 953 of the Probate Code to make a decree requiring the sequestration of property as security for a claim not due or contingent. That such a proceeding is an action in equity and that the equity side of the court may be invoked to protect the owners of contingent claims which will mature after the period within which distribution in the estate may take place, was the holding in *Dabney* v. *Dabney,* 9 Cal.App.2d 665, 673 [51 P.2d 108]; *Vallelunga* v. *Gomes,* 102 Cal.App.2d 374, 382 [227 P.2d 550].

We are satisfied that appellant's attack upon the finding that $250 annually was a necessary additional clothing expense under the property settlement agreement cannot be sustained. At the outset it should be noted that neither the incompetent or his guardian has a vested right in the total amount of the judgment entered herein. The respondent guardian has the right to expend from that fund the sums of money, not exceeding $300 monthly in accordance with the property settlement agreement, that are necessary for the maintenance and support of the incompetent. It is also noteworthy that according to the judgment herein, should the incompetent recover to the extent that he could return to a normal life in society, thereby no longer requiring medical care or hospitalization, or should the incompetent die, the unexpended remainder of the fund set aside by the trial court

and in the possession of the trustee would then be distributed by the probate court in accordance with the decree of distribution made by that court.

While the discretion of the trial court in a proceeding such as the one now engaging our attention must not be arbitrary or capricious and must be exercised within reason, it is equally true that an appellate tribunal may not substitute its judgment for that of the court below unless it clearly appears that a case has been made reasonably justifying the conclusion that the questioned finding indicates a lack of ordinary good judgment, and that no reasonable inferences can be drawn from the evidence to support the finding and the judgment predicated thereon. We are satisfied that the finding now under consideration cannot be thus strictured.

There was evidence that the only clothing furnished to the incompetent by the state hospital was the "bare necessities," or "a ward uniform" consisting of "blue denims and an old shirt." In addition to the testimony of respondent guardian wherein he estimated that the cost of providing the incompetent with clothing would be approximately $100 annually there is in the record testimony by Mrs. Marjorie H. Stellar, mother of the incompetent, that she visited the latter on numerous occasions. That the only clothing furnished the incompetent by the state hospital was "bare necessities" as aforesaid. That suits, dress shirts, slacks, ties, shoes and slippers had to be furnished to the incompetent from sources other than the hospital. She further testified that the hospital's medical staff felt that having "dress-up" clothing was good for the incompetent's morale and was part of his therapy and that she, herself, had expended the sum of $130 for clothing for the incompetent approximately two months prior to the time of the hearing of this matter in the trial court. Appellant does not contend that the allowance made by the trial court for clothing for the incompetent son was not within contemplation of the property settlement agreement, but only that there is no evidence in the record to support the amount of such allowance. When the estimate of respondent guardian is added to the money expended by the incompetent's mother, and the reasons given for such expenditures, we cannot say that the figure arrived at by the trial court exceeded the bounds of reason, and was devoid of any substantial evidence to support it (*Estate of Cornaz,* 8 Cal.2d 347, 355 [65 P.2d 784]; *Robertson* v. *Nichols,* 92 Cal.App.2d 201, 207 [206 P.2d 898]).

The next item under attack by appellant is the allowance of $250 annually for medical examinations to be made by a psychiatric expert not affiliated with the Camarillo State Hospital. We are persuaded that the contention of appellant must be sustained. We are not directed to any evidence in the record which supports a finding that an annual independent psychiatric examination of the incompetent is necessary or reasonably indicated. At the trial it was stipulated that Dr. John B. Doyle would testify to the facts and opinions contained in his letter to Robert Sikes, attorney for appellant under date of June 12, 1956, and which letter was admitted into evidence. This independent examination cost $250. The addendum to Dr. Doyle's letter contains some six pages of the medical record of the incompetent at the state hospital, and also states that the latter is receiving complete medical and psychiatric care at the hospital. That the incompetent has been under the care of Doctors Nash, Talbot and Jussman, (the latter being Senior Clinical Psychologist). That the incompetent has been receiving electro-shock therapy, music therapy, and applications of thorazine, all approved methods for treating the ailment of the incompetent. There is no evidence that the facilities provided at the state hospital are inadequate or that the incompetent, while at the state hospital, is not at all times receiving the care and attention of able and competent physicians and psychiatrists. Respondent urges that the trial court was empowered to determine that it was for the best interests not only of the incompetent but also the heirs and legatees to have an annual opinion and other advice of an independent medical expert to determine the exact mental condition of the incompetent, "in order that the funds set aside by the trial court in this proceeding for his medical care and support could, as soon as possible, be made available for distribution to the heirs and legatees of the decedent." We see no valid reason why this determination could not be made on the medical records kept of the periodical examinations made and the prognosis arrived at by the medical and psychiatric staff of the state hospital. Respondent advances the further argument that "the trial court might also take judicial notice that at some time during the next forty-two years the incompetent might recover sufficiently to enable him to be discharged from Camarillo State Hospital or to be hospitalized in an independent institution but would still require medical attention and care which would not be furnished by some state agency." However, in that event it is manifest that respond-

ent guardian could then resort to the $1,800 allowed for maintenance of the incompetent at the state hospital, which payment to the hospital would cease when and if the incompetent was discharged therefrom. There being a complete absence of any showing of the necessity for outside and independent psychiatric examinations each year, it necessarily follows that the allowance therefor was erroneous.

In considering the equities involved in this proceeding, regard must be had for the terms of the property settlement agreement, the value of the estate, and the interests of the widow, the infant daughter of decedent, the other son, as well as the incompetent. In the estate of the latter there is at present some $7,200 to which will be added 7/45 of his deceased father's estate.

■ A serious question is presented by appellant's contention that the court erred in sequestering the sum of $360 annually for the expenses and fees of a trustee to administer the trust funds of the incompetent over a life expectancy period of 42 years, totaling $8,196.48. Appellant concedes that respondent guardian is entitled to his reasonable fees and expenses from the estate, under the provisions of Probate Code, section 1556, but urges that such compensation must come from the funds of the incompetent's estate (consisting of $7,200 and 7/45 of the estate of his deceased father), but not out of the assets of the decedent's estate being administered by appellant executor. The latter argues that in the present proceeding the court is not appointing a trustee to handle this particular claim of the incompetent under section 953.1 of the Probate Code because the incompetent already had an estate and there was a guardian-trustee acting for the ward. That the court in the instant proceeding is merely determining the amount to be delivered to this guardian-trustee on the incompetent's claim against the estate of his father. That respondent guardian should look to his ward's estate generally and in its entirety and this would include the guardian's fees for handling the total trust estate inclusive of the judgment rendered in the case at bar.

Appellant earnestly contends that his argument finds support in the language of Probate Code, section 953, upon which respondent bases this action and which he contends authorizes only the setting aside from the decedent's estate ". . . such part of the same *as the holder* (of the contingent claim) *would be* entitled to if the claim were due." (Em-

phasis added.) That since if the incompetent's claim were due he would not be entitled to any additional allowance for the fees or expenses of his guardian to administer it, the same reasoning applies to a contingent claim, payable in installments or on the happening of a stated event.

From the judgment entered herein it is at once apparent that the court proceeded under the provisions of section 953.1 of the Probate Code which authorizes the court to appoint a trustee to whom the funds sequestered from the estate shall be paid, and who shall make the payments therefrom as authorized by the court. We are persuaded that the court having appointed a trustee was authorized, under section 953.1 to set aside a sufficient sum of money from which the probate court could at a future time make its order to compensate the trustee upon a proper showing, for his services rendered to the trust estate (Prob. Code, § 1122). Had the court proceeded under section 953 rather than 953.1 it would have been necessary to have set aside from the assets of the decedent father's estate a sum of money in cash to cover the medical care, hospitalization, etc., required by the incompetent for a period of 42 years, which was the latter's life expectancy. This cash fund would have been delivered to the county treasurer subject to the continuing jurisdiction of the trial court sitting as a court in equity, to order the monthly payments as required (*Vallelunga* v. *Gomes, supra,* p. 379). Had that procedure been followed in the trial court, the sum of $75,600 in cash would have been deposited with the court designated depository to provide the bare essentials of hospitalization and medical care for the incompetent at the rate of $1,800 annually for a period of 42 years. The procedure adopted by the court under section 953.1 of the Probate Code has saved to the estate and the heirs and legatees approximately $6,000.

Appellant strongly urges that there is no provision whatsoever in the property settlement agreement for any obligation on the part of decedent father for trustee's fees nor is there a trust set up therein. That it is a mere contract partially for the benefit of a third party, the incompetent son. The answer to this contention is that insofar as the provisions of the property settlement agreement with which we are here confronted are concerned, the primary purpose thereof was to provide funds for the medical treatment and care of the incompetent son, and for which purposes the aforesaid agreement provided the decedent father would pay the first $300

per month required. Had the court followed appellant's contentions, a situation could well arise wherein funds allocated to pay for hospitalization and medical care would be depleted because of the allowance therefrom of compensation for the trustee and attorneys' fees, etc. It must be remembered that when decedent entered into the property settlement agreement he was, at the time, aware of the mental and physical condition of his incompetent son. He was aware of the cost of medically treating and hospitalizing him. With knowledge of these factors in mind, the decedent agreed to provide up to $300 monthly for that purpose. It must also be assumed that, fortified with independent legal advice, he realized that in the event of his death, a fund must necessarily be established out of his estate to be administered by a trustee, to the end that such fund would be utilized to carry out the terms of his aforesaid agreement, and that the expenses of maintaining that fund and administering it would become a part of that cost and expense. Since the monthly sum awarded by the court for the support, care and maintainance of the incompetent does not exceed in totality the amount of $300, we cannot say that the court, sitting in equity, was without authority, under the terms of the property settlement agreement, to set aside an amount out of which fees for the trustee could later be awarded by the probate court without diminishing the amount of money necessary for the maintainance and care of the incompetent son of decedent.

Finally, appellant insists that the finding of the court, ". . . that further increases in the cost of hospitalizing said incompetent during his life expectancy of forty-two years are reasonably certain to occur," and setting aside $360 additional per year for such increased hospitalization costs, is not supported by any substantial evidence. Appellant contends that setting aside the aforesaid sum to cover the anticipated increased cost of hospitalization and care during the ensuing 42 years of life expectancy of the incompetent amounts to mere conjecture and speculation unsupported by substantial evidentiary facts. With this contention we cannot agree. There was evidence before the court that the cost of maintaining this incompetent in the State Hospital at Camarillo has increased at the rate of $16 per month since January 1, 1955, and the court was entitled to take judicial notice of the economic condition of the country, that the cost of living is steadily increasing while the purchasing power of the dollar is steadily decreasing. In determining a matter such as this,

no method could be devised that would be free of difficulties. The court was attempting to make the incompetent secure through a fund adequate for his maintainance, hospitalization and medical care, in accordance with the provisions of the property settlement agreement, and for a life expectancy of 42 years. While of course, the future is hidden from judicial view, we cannot say that there is anything grossly inequitable, or at all inequitable about the order impounding the sum of $360 annually for the increased cost of hospitalizing the incompetent, in the light of the foregoing increase of care and hospitalization of $16 per month between January 1, 1955, and the date of trial; the existing economic conditions and the prognosis for the future based on the experience of the past.

Both appellant and respondent concede a mathematical error in the computation of the court which if the judgment as rendered were affirmed would reduce the amount thereof by the sum of $910.72. However, since the cause must be remanded for further proceedings, the error in question can be corrected.

For the foregoing reasons, the judgment is reversed and the cause remanded with directions to the court below to enter a new and different judgment for plaintiff in accordance with the views herein expressed. The parties will bear their respective costs on appeal.

Fourt, J., and Lillie, J., concurred.