[Civ. No. 20787. First Dist., Div. One. June 15, 1964.]

DOROTHY M. NEWHALL, Plaintiff and Respondent, v. RUTHIE M. NEWHALL, as Executrix, etc., Defendant and Appellant.

Dinkelspiel & Dinkelspiel, Richard C. Dinkelspiel and John Poppin for Defendant and Appellant.

Young, Rabinowitz & Chouteau and Walter C. Chouteau for Plaintiff and Respondent.

SULLIVAN, J.—We hold here that the obligation of a deceased husband to make payments pursuant to an approved property settlement agreement and interlocutory judgment of divorce, for the support of his minor children until their respective ages of majority, did not cease upon his death but survived as a charge against his estate. The trial court properly determined that decedent's former wife was entitled to judgment against his executrix upon the wife's creditor's claims for the amounts of such child support as well as for amounts to be paid under the agreement for the wife's own support. We therefore affirm those portions of the judgment appealed from.

The facts are not in dispute. Plaintiff Dorothy Newhall and George A. Newhall were married on November 21, 1942, in Carson City, Nevada. There are two minor children born issue of this marriage: George Almer Newhall III and Caroline Taylor Newhall. Plaintiff obtained an interlocutory judgment of divorce from Mr. Newhall in San Francisco on October 27, 1952, and a final decree of divorce on November 3, 1953. Under the provisions of the interlocutory judgment, the custody of both children was awarded to the parties jointly with physical custody and general control in the plaintiff. The interlocutory judgment also ratified and approved a property settlement agreement executed by the parties on October 23, 1952.

This agreement provided among other things that George Newhall pay to plaintiff $5,000 annually in 12 equal monthly installments as his share of the support and maintenance of each of the minor children until their majority and to pay to

plaintiff $22,000 annually in 12 equal installments for her support and maintenance. It was also provided that the payments to plaintiff for her support should cease in the event of her death or the death of George Newhall, subject to the further proviso that if Newhall died within 10 years from October 23, 1952, plaintiff should nevertheless continue to receive such payments until October 23, 1962, unless she should sooner die or remarry.

Under the provisions of the interlocutory judgment, the agreement was ratified and approved and each of the parties was ordered to perform his or her obligations thereunder. In addition defendant was ordered pursuant to the agreement to make the payments to plaintiff for her support and the support of the children already summarized herein.

George Newhall died on July 13, 1958. His last will was admitted to probate and his second wife Ruthie M. Newhall, defendant herein, appointed executrix. Thereafter plaintiff timely filed in such estate proceeding creditor's claims for monies due and to become due from said decedent by virtue of the above mentioned property settlement agreement and the interlocutory and final decrees of divorce. Upon the rejection of such claims by defendant executrix, plaintiff on March 5, 1959, commenced the instant "action in equity to establish claims."

The trial court found, so far as is here pertinent, that on October 23, 1952, plaintiff and George Newhall entered into a written property settlement agreement which provided "that said George A. Newhall should pay to plaintiff the sum of $5,000.00 annually in twelve (12) installments as his share of the support and maintenance of each child until his or her majority respectively"; that at the time of the death of George Newhall $24,166.67 was due, owing and unpaid from said decedent to plaintiff for child support payments; that child support payments during the balance of the minority of George Almer Newhall III commencing on August 1, 1958, and continuing until February 28, 1965, would amount to $32,916.63, payable at the rate of $416.66 per month; that child support payments during the balance of the minority of Caroline Taylor Newhall commencing on August 1, 1958, and continuing until November 10, 1966, would amount to $41,-666.65 payable at the rate of $416.66 per month; that at the time of said decedent's death, $37,833.22 was due, owing and unpaid from him to plaintiff for her own support and maintenance; and that from the date of death of said decedent

until the expiration of the 10-year period heretofore mentioned such support and maintenance payments would amount to $93,499.83 at the rate of $1,833.33 per month until October 1962, or until plaintiff's death or remarriage prior to October 1962. Judgment was rendered accordingly.[1]

We face two basic questions: (1) Did the decedent's obligation to make child support payments pursuant to the property settlement agreement continue after his death? (2) Was the judgment in plaintiff's favor for support payments for herself and her children, both due and to become due, sustained by the law and the evidence? We have concluded that both questions should be answered in the affirmative.

■ The property settlement agreement required decedent to make specified annual payments to plaintiff as his share of the support and maintenance of each child "until his or her majority." It contained no provision that such payments were to cease upon decedent's death.[2] ■ "In California the rule is that the obligation of a father to support his minor child which is fixed by divorce decree or property settlement agreement, does not cease upon the father's death, but survives as a charge against his estate." (*Taylor* v. *George* (1949) 34 Cal.2d 552, 556 [212 P.2d 505]. In accord: *Newman* v. *Burwell* (1932) 216 Cal. 608, 612-613 [15 P.2d 511]; *Estate of Smith* (1927) 200 Cal. 654, 659-660 [254

[1]The findings of fact and conclusions of law and the judgment were both filed on March 2, 1962. The judgment ordered payment to plaintiff of the above amounts of child support, specifying the amount thereof due up until decedent's death, accruing the amounts thereof due to and including February 1962 (the month preceding the judgment), and ordering monthly payments thereof ($416.66 for each child) commencing with March 1962. Similarly, the judgment ordered payment to plaintiff of her own support, specifying the amount due at decedent's death ($37,833.32), accruing the amount thereof due to and including February 1962 ($78,833.19 as corrected by amendment of final judgment entered *nunc pro tunc*), and ordering monthly payments thereof ($1,833.33) to and including October 1962, unless plaintiff died or remarried. We explain *infra* those portions of the judgment relating to (a) support payments to be made from March 1962 until the final distribution of the estate and (b) payments to be made after such final distribution.

It is to be noted that the court denied plaintiff recovery for her claim relating to attorneys' fees and costs. Defendant does not appeal from that portion of the judgment.

[2]The entire clause of the agreement is as follows: "Husband agrees to pay to wife the sum of Five Thousand ($5,000.00) Dollars annually, in twelve equal installments, as his share of the support and maintenance of each child until his or her majority."

P. 567]; *Estate of Caldwell* (1933) 129 Cal.App. 613, 615 [19 P.2d 9]; *Estate of Goulart* (1963) 218 Cal.App.2d 260, 263 [32 Cal.Rptr. 229].) In *Newman* v. *Burwell, supra,* at page 612 the court said: "It is true that in certain of the cited cases the father's obligation was to pay a designated sum monthly *during the minority* of the child, thus *tending to irrefutably indicate that it was to survive the father, ...*" (Last italics added.) ■■■ Clearly under the settled rule declared in the above cases, decedent's estate was liable not only for child support payments accrued at the date of death but also for such payments after his death and during the balance of the minority of each of the children.

Defendant argues that an intent to have the child support payments terminate at death is evident from the fact that although the agreement made specific provision in respect to the wife's support payments after death, it is silent as to the continuance of the child support payments. We disagree. As already pointed out, the agreement expressly obligates the husband to make such payments for each of the children "until his or her majority." (See *Newman* v. *Burwell, supra.*) Nowhere in the agreement is there any limitation or restriction of this express obligation. If the parties had intended to terminate the child support payments upon the husband's death, it would have been very easy to so provide in the agreement. Each of the parties was represented by able counsel who endorsed their approval of the agreement at the end thereof.

Notwithstanding the express language of the agreement, defendant also argues that, because of certain other considerations of which there was evidence below, we must conclude that the only reasonable interpretation of the agreement is that the child support payments were *not* to continue after death. Assuming without deciding that the pertinent extrinsic evidence was properly before the trial court, we are not persuaded that it had a countervailing effect upon the agreement or that in the light of such evidence the trial court's interpretation of the agreement was unreasonable and erroneous.

■■■ We briefly dispose of the points of defendant's argument. First, it is urged that at the time they executed the agreement the parties knew that upon George Newhall's death, his two children would receive substantial interests in the trust created under the will of Mr. Newhall's mother,

then deceased,[3] and therefore must have intended that the husband's child support payments would terminate at his death. However it does not necessarily follow that because the children were to receive substantial assets from their grandmother's trust, such assets were to be a substitute for an obligation manifestly undertaken by a carefully prepared contract. Indeed these facts give rise to a contrary inference: that the husband being well apprised of them intended to charge his estate with the obligation of the agreement even though the children received benefits from the trust and that if the parties had intended to make the trust benefits a substitute for obligations of the agreement, they could have very easily so provided. ■ In addition we observe, as the trial court did, that decedent was required to make the payments in question "as his share" (see footnote 2, *ante*) of the children's support. The above quoted language is susceptible of the implication that the husband's payments were not the total amount necessary for their support; it does not of necessity suggest that the children might not receive other funds.

■ Secondly, it is urged that an intent to have the so-called "grandmother's trust" relieve the husband's estate from the burden of supporting the children is evident from the fact that in the property settlement agreement, he agreed to assign his interest in said trust as security for his obligation to make payments of support.[4] It does not follow that because the obligation was to be secured during his lifetime, it of necessity was to be dissolved at his death. As the court said in *Newman* v. *Burwell, supra,* 216 Cal. 608, 613, "We conclude, therefore, both upon reason and authority, that the existence of security is neither a controlling circumstance nor an essential prerequisite to a determination of the continuing character of the decedent's obligation." Furthermore the husband agreed to assign his interest in the trust as security

[3]George Newhall was the life income beneficiary and his two children the remaindermen. At oral argument counsel for the parties agreed the value of each child's share is approximately $464,000 and the annual income of each share approximately $25,000.

[4]The agreement provides: "Husband agrees to assign to wife his interest under the trust created by the will of his mother for the purpose of securing the payment of all sums of money herein agreed to be paid to wife for the support and maintenance of herself and said minor children. Said assignment shall be in a form satisfactory to both husband and wife and also in a form satisfactory to the trustee under said trust."

for the wife's support payments as well as the children's. (See footnote 4, *ante*.) Defendant nowhere claims that as a result the husband's estate was to be relieved from the burden of the wife's payments as well.

■ Finally defendant claims that the decedent's express exclusion of his children from any benefits under his will, shows his intent that his children (including another child born issue of decedent's marriage existing at the time of his death) should be provided for after his death by the grandmother's trust. The will in question was executed on March 26, 1958, approximately five and a half years after the execution of the agreement. Such a unilateral act is ineffective to release the husband from the obligations of his contract and clearly not a helpful, let alone controlling circumstance, in the construction of its terms. *Taylor* v. *George, supra,* 34 Cal.2d 552, relied upon by defendant is distinguishable from the case before us since there a reasonable construction of the husband's will showed that he intended to and did fulfill his obligation of support by means of life insurance policies which were more than sufficient to meet the future payments required by the divorce decree.[5]

It is clear that the trial court declined to draw from the extrinsic evidence the inferences urged by defendant and concluded upon all the evidence before it that the parties to the agreement did not intend that under its provisions the child support payments would terminate upon decedent's death. Defendant's position that the inferences urged by her are the only reasonable inferences deducible from the evidence and that a conclusion against continuance of the payments after death is the only reasonable interpretation of the contract is untenable. ■ On the contrary we are of the opinion that the trial court's interpretation of the agreement is reasonable and consistent with the intent of the parties apparent in its language. Under such circumstances, we will not substitute another interpretation, even though it might seem (and none does here) equally tenable. (*Tide Water Associated Oil Co.* v. *Curtin* (1940) 41 Cal.App.2d 884, 895 [107 P.2d 945]; *Riccomini* v. *Riccomini* (1947) 77 Cal.App. 2d 850, 853 [176 P.2d 750]; *Alexander* v. *Alexander* (1948) 88 Cal.App.2d 724, 727 [199 P.2d 348]; *La Jolla Casa de Manana* v. *Hopkins* (1950) 98 Cal.App.2d 339, 348 [219 P.2d

[5]In *Taylor* the court said: "No reason appears why the testator could not, by his will, designate the fund out of which his obligations were to be met." (P. 558.)

871] ; *Shepard* v. *Shepard* (1953) 116 Cal.App.2d 594, 596 [254 P.2d 120].)

We therefore proceed to consider the second question presented by the appeal, that is whether the recovery granted by the court is supported by the law and the evidence. ▮ As we have pointed out, plaintiff timely filed against decedent's estate creditor's claims not only for the child support payments but for payments of her own support as well. This she was required to do, even as to those support payments which were not yet due or were contingent. (Prob. Code, §§ 707, 732; *Verdier* v. *Roach* (1892) 96 Cal. 467, 478-479 [31 P. 554].) ▮ Upon rejection of her claims, she was entitled to bring an action against defendant executrix in accordance with the provision of section 714 of the Probate Code.[6] However she was not entitled to bring an action *at law* on that portion of the claim not yet due or contingent until within two months after such payments had become due. (Prob. Code, § 714; *Southern Pac. Co.* v. *Catucci* (1941) 47 Cal. App.2d 596, 598 [118 P.2d 494].) ▮ Plaintiff therefore commenced the instant "action in equity to establish claims," as her complaint is entitled, in order to recover those child support payments which had accrued at the date of decedent's death and in addition to secure a decree impounding and sequestering assets and funds belonging to the estate sufficient to meet those payments not yet due. It is settled that such a proceeding is one *in equity* and that the equity side of the court may be invoked to protect the owners of contingent claims which will mature after the period within which distribution may take place. (*Miller* v. *Miller* (1915) 171 Cal. 269, 271-272 [152 P. 728]; *Newman* v. *Burwell, supra,* 216 Cal. 608, 614; *Dabney* v. *Dabney* (1935) 9 Cal.App.2d 665, 672-673 [51 P.2d 108]; *Jones* v. *Roberts* (1958) 163 Cal.App.2d 89, 94 [329 P.2d 50]; Prob. Code, §§ 953, 953.1.)[7] ▮ In such a proceeding, the plaintiff

[6]Section 714 of the Probate Code provides in part: "When a claim is rejected either by the executor or administrator or by the judge, written notice of such rejection shall be given by the executor or administrator to the holder of the claim or to the person filing or presenting it, and the holder must bring suit in the proper court against the executor or administrator, within three months after the date of service of such notice if the claim is then due, or, if not, within two months after it becomes due; otherwise the claim shall be forever barred. ...''

[7]Probate Code section 953 provides: "If there is any claim not due, or any contingent or disputed claim against the estate, the amount thereof, or such part of the same as the holder would be entitled to if

must show the condition of the estate of the decedent, the ability of the executor or administrator to provide for the future payments, and the desirability of creating a fund to meet them. (*Miller* v. *Miller, supra*; *Newman* v. *Burwell supra*; *Southern Pac. Co.* v. *Catucci, supra*, 47 Cal.App.2d 596, 599.)

In the instant case judgment was rendered in favor of plaintiff and against defendant executrix for all support payments both for the children and plaintiff herself which had accrued up to and including February 1962, the month preceding the entry of judgment. The court thus gave judgment against the estate for a total of $166,666.41.[8]

In addition the court rendered judgment in plaintiff's favor against the executrix as follows: For the sum of $416.66 per month for child support of George Almer Newhall III "commencing March, 1962 and continuing until said minor reaches his majority on February 28, 1965, or if said minor dies prior thereto until the date of his death" (paragraph I subdivision (c) of judgment); for the sum of

---

the claim were due, established, or absolute, must be paid into court, and there remain, to be paid over to the party when he becomes entitled thereto; or, if he fails to establish his claim, to be paid over or distributed as the circumstances of the estate require. If a creditor whose claim has been allowed, but is not yet due, appears and assents to a deduction therefrom of the legal interest for the time the claim has yet to run, he is entitled to be paid accordingly. The payments provided for in this section are not to be made when the estate is insolvent, unless a pro rata distribution is ordered.''

Probate Code section 953.1 in relevant part provides: ''Notwithstanding any other provision of law, when a contingent claim is filed, which is payable in installments or upon the happening of a stated event, the court may in its discretion appoint a trustee to whom the funds shall be paid with the directions to said trustee to invest the money as authorized by court or in securities which are legal investment for savings banks, and the trustee shall make the payments as ordered by the court. The court in determining the amount of the contingent claim payable in installments or upon a stated event, will compute the present value thereof, giving consideration to a reasonable interest rate upon the funds to be invested; upon completing the payments as provided in the decree, order or judgment allowing said claim, any excess funds in possession of the trustee shall be paid in accordance with the decree of distribution.''

[8]In summary this portion of the judgment is as follows: $24,166.67 for both children up to July 13, 1958, the date of decedent's death; $25,833.23 for both children from July 13, 1958 to and including February 1962; $37,833.32 for plaintiff's own support until July 13, 1958; and $78,833.19 for plaintiff's own support from July 13, 1958 to and including February 1962.

$416.66 per month for child support of Caroline Taylor Newhall "commencing March, 1962 and continuing until said minor reaches her majority on November 10, 1966, or if said minor dies prior thereto until the date of her death" (paragraph I, subdivision (d)); and for the sum of $1,833.33 per month for plaintiff's support "commencing March, 1962 and continuing up to and including October, 1962, or if the plaintiff dies or remarries prior to October, 1962, then until the date of such death or remarriage" (paragraph I, subdivision (g)). In separate paragraphs of the judgment (paragraphs IV and V) the court then made provision for the determination and payment upon final distribution of decedent's estate of those sums due under paragraph I, subdivisions (c), (d) and (g)[9] and of those sums to become due thereafter under such subdivisions. In respect to the latter, the court directed that the "then present value" of the support payments be determined and that sufficient funds be distributed to a court appointed trustee pursuant to section 953.1 of the Probate Code (see footnote 7, *ante*) to meet all such support payments, the balance thereof to be returned to the estate upon the failure of any of the contingent claims.[10] Finally, the judgment ordered "[t]hat all of the aforesaid sums be paid in due course of the probate administration of the Estate of George A. Newhall, deceased."

Defendant's first attack on the judgment asserts that it constitutes an "enforcement" of the support provisions of the agreement, that the trial court had the equitable power to

---

[9]Paragraph IV of the judgment provides: "That upon the final distribution of the Estate of George A. Newhall, deceased, the Court will determine the sums due to plaintiff, if any, under paragraph I, subdivisions (c), (d) and (g) of this Judgment, from and including March, 1962 to the date of final distribution of said estate and order the same to be paid to plaintiff by defendant as executrix of the Estate of George A. Newhall, deceased."

[10]Paragraph V of the judgment provides: "That upon the final distribution of the Estate of George A. Newhall, deceased, the Court will determine the then present value of the amounts to become due thereafter, if any, under paragraph I, subdivisions (c), (d), and (g) of this Judgment, based upon the formula for the then present value of an annuity payable in monthly installments invested at 4% interest per annum compounded quarterly. A separate computation to be made for each of said subdivisions. That said present value be distributed to a trustee pursuant to section 953.1 of the Probate Code of the State of California for payment to the plaintiff in conformance to the terms of said subdivisions. Upon the failure of any of said contingent claims then the trustee shall be directed upon such failure to return the balance of said sum held for that contingent claim to the aforesaid estate."

refuse such enforcement and that it should have done so. Although not expressly stated, the clear implication of the contention is that the court committed error in granting judgment for all support payments both accrued and accruing.

■ Three arguments are advanced to support this position: The first is grounded on the premise that under section 139 of the Civil Code a decree of divorce "may be enforced by the court by execution or by such order or orders *as in its discretion* it may from time to time deem necessary." (Italics added.) Citing *Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988]; *Baum* v. *Baum* (1959) 172 Cal.App. 2d 658, 664 [342 P.2d 940]; *Tobin* v. *Tobin* (1960) 181 Cal. App.2d 789, 794 [5 Cal.Rptr. 712]; and *Power* v. *California Bank* (1962) 204 Cal.App.2d 754 [22 Cal.Rptr. 629], defendant argues that the practical effect of section 139 and of the above cases is to make enforcement of the support provisions of an integrated property settlement agreement discretionary with the trial court. The instant action however is one brought on rejected creditor's claims and does not involve the question of the court's discretion in the issuance of a writ of execution (cf. *Messenger* v. *Messenger, supra*), the appointment of a receiver (cf. *Baum* v. *Baum, supra*; *Tobin* v. *Tobin, supra*) or similar orders to which the above quoted language of section 139 relates.[11]

It is next urged that "the very terms of the property settlement agreement make the enforcement of the child support provisions discretionary with the court." This is so, says defendant, because the agreement states that the child support provisions are "[s]ubject to any future order of any court having jurisdiction of the subject matter."[12] It is convenient to note at this point that the agreement now en-

[11]*Power* v. *California Bank, supra*, did not involve the ordinary enforcement procedures under Civil Code section 139 but was an action in equity against the husband's estate. In *Power*, unlike the instant case, the property settlement agreement did not specify any definite sum to be paid by the husband's estate but provided that upon the husband's death, in the absence of any agreement, "any Court of competent jurisdiction shall fix the amount which ... his estate shall pay to" the wife for child support. The trial court's judgment in favor of the executor was sustained under all the circumstances there prevailing.

[12]This is the opening language of paragraph Sixth of the agreement which contains as subdivision A thereof the provisions as to custody and as subdivision B the provisions as to child support. (See footnote 2, *ante*.)

gaging our attention was construed by this court in *Newhall* v. *Newhall* (1958) 157 Cal.App.2d 786 [321 P.2d 818], an action between this plaintiff and decedent George Newhall. The same contention above-mentioned was made to and rejected by us on the appeal in that case. (See 157 Cal.App.2d at pp. 794-795.)

Finally defendant argues without citation of any authority that "Civil Code section 139 as amended, 1961, indicates a clear legislative intent that equitable considerations should be applied to the enforcement of support agreements." Defendant directs our attention to the second paragraph of section 139 as it then read.[13] Here again defendant seeks to equate the instant action with the enforcement procedures referred to in the first paragraph of section 139. We have already explained that we are not here confronted with an enforcement problem arising under that section. ▇▇▇ It is almost unnecessary to point out that the amendments enacted in 1959 and 1961 to the second paragraph of section 139 relied upon by defendant (see footnote 13, *ante*) and authorizing modification of an integrated property settlement agreement are not effective as to the agreement in the instant case.[14] Thus the Legislature clearly indicated that integrated agreements entered into before 1959, such as the one here, are to remain unmodifiable unless altered by consent of the contracting parties. (See *Taliaferro* v. *Taliaferro* (1962) 200 Cal.App.2d 190, 195 [19 Cal.Rptr. 220].)

Defendant's second attack on the judgment charges that the trial court "abused its discretion" in allowing recovery on plaintiff's rejected claims. It is to be noted that defendant applies this argument to payments both for the support of the children and for plaintiff's own support and to those payments which accrued before the death of decedent as well as to those accruing thereafter. Here again defendant's theory is that the instant action represents an "enforce-

---

[13]The language of section 139 relied upon is as follows: "That portion of the decree or judgment making any such allowance or allowances, and the order or orders of the court to enforce the same, including any order for support of children or order for support of the other party based on a provision for such support in an integrated property settlement agreement, may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation. ...."

[14]The 1959 amendment specifically declared that it was "effective only with respect to property settlement agreements entered into after the effective date of such amendments."

ment'' of a divorce decree under section 139 and that by rendering judgment in plaintiff's favor, the court below "abdicated" its equitable powers under that section. This convenient transposition of the concept of discretionary enforcement from procedures contemplated by section 139 to the instant action is, as we have said, totally unsupported by authority.

The real thrust and purpose of defendant's arguments is to secure the modification of an integrated agreement which this court has already held in the first *Newhall* case to be unmodifiable. To accomplish this, defendant equates the discretionary enforcement of decrees under section 139 with the complete nonrecognition of valid contractual obligations. As was said in *Bradley* v. *Superior Court* (1957) 48 Cal.2d 509, 519 [310 P.2d 634], ''[n]either the court nor the Legislature may impair the obligation of a valid contract (Cal. Const., art. I, §§ 1, 16) and a court cannot lawfully disregard the provisions of such contracts or deny to either party his rights thereunder. [Citations.]''

There is accordingly no merit to defendant's argument that her decedent was ''locked'' into an inequitable agreement by our decision in the first *Newhall* case and that the trial court in the instant action abused its discretion in not releasing decedent's estate from such harsh imprisonment. We held in *Newhall* that the agreement now engaging our attention constituted an integrated inseverable property settlement agreement, that decedent's obligation to make support payments to this plaintiff pursuant to the agreement became fixed and is not subject to modification, and that his additional obligation to make child support payments to this plaintiff also ''could not be modified downward though it could be modified upward upon a showing of an appropriate change in circumstances ... unless incident to a change in the custody of the children.'' (*Newhall* v. *Newhall, supra,* 157 Cal.App.2d 786, at pp. 790-794.) Accordingly we there affirmed the order of the lower court denying decedent George Newhall's motion to modify the final decree of divorce. Defendant's present argument represents an attempt to annul the decision in *Newhall* and, by urging nonenforcement of the agreement, to bring about in effect its modification. The issue as to whether the agreement was integrated and its support provisions modifiable, was finally determined against decedent in the prior action and is binding upon him and defendant executrix, his successor in

interest, in the instant one. (Code Civ. Proc. § 1908, subd. 2; *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 317 [202 P.2d 73, 6 A.L.R.2d 461]; *Basore* v. *Metropolitan Trust Co.* (1951) 105 Cal.App.2d 834, 837 [234 P.2d 296].) The obligations of such agreement were definite and fixed in amount and to the extent thereof were binding upon the decedent and his estate. The present case is therefore distinguishable from *Power* v. *California Bank, supra,* 204 Cal.App.2d 754, relied on by defendant where the property settlement did *not* bind the husband to pay a definite amount for support but only such reasonable amount as might be determined by the court according to the station in life of the children in that case and the ability of the father's estate to pay.

Defendant complains that the net result of allowing plaintiff's claim is to deplete decedent's estate to the prejudice of his creditors and legatees. Therefore, she argues, the judgment is inequitable and constitutes an abuse of discretion. In this connection it is to be noted that the trial court found to be "not true" the allegations of defendant's ninth affirmative defense to the effect that if plaintiff's claims were granted, the assets of the estate would be so depleted by payment of them that it would be inequitable and contrary to the proper administration of justice to allow such claims as prayed for and to permit execution to issue on the basis thereof. We have concluded that the record supports this finding, that the court's action in allowing recovery on plaintiff's claim was proper under all of the circumstances of the case and that defendant's argument is without merit.

The obligation on which plaintiff's creditor's claim was predicated was fixed, definite and binding on decedent and his estate. (See *Taylor* v. *George, supra,* 34 Cal.2d 552 and other authorities cited *supra; Bradley* v. *Superior Court, supra,* 48 Cal.2d 509.) As we have explained, the trial court first ordered judgment for all payments accrued to the date of the judgment, a total sum of $166,666.41. We cannot say that the court's action in this respect was improper. (Cf. *Lisle* v. *Ragle* (1936) 11 Cal.App.2d 537 [54 P.2d 44].) Although some of the payments were not yet due at the time the instant action was commenced, March 5, 1959, all payments represented by the above sum of $166,666.41 had accrued at the time of the judgment. It would be technical to insist that, as to the payments becoming due in the interim, plaintiff should have commenced one or more independent actions. No inequity was worked on other creditors since the obligation involved was just as much a binding obligation of

decedent as his other contract obligations. Payment of the $166,666.41 was to be made only upon an appropriate order in probate. (Prob. Code, §§ 950, 951, 952.) ▆ Even assuming *arguendo* that decedent's estate might be insufficient to pay all debts in the same class as the accrued payments, we must also assume that the probate court would order any payment thereof on a pro rata basis. (Prob. Code, § 952.)

▆ Nor can we find any impropriety in that portion of the court's judgment which ordered determination and payment on the final distribution of decedent's estate of support payments becoming due between the date of the judgment and the date of such final distribution. The amount of such monthly payments ordered by the court was fixed by the property settlement agreement. Assuming *arguendo* that the estate might be insufficient to pay these and other debts in the same class, we must assume that in respect to these amounts also, the probate court would order any payment on a pro rata basis. (Prob. Code, § 952.) If defendant should desire to close the estate (there is no present indication that she does), she could avail herself of those provisions of the judgment directing payment at the time of final distribution to a court-appointed trustee pursuant to Probate Code section 953.1 of all payments becoming due thereafter. We observe that the matter of continuing monthly payments commencing with March 1962 has this realistic aspect: At the present time all payments for plaintiff's own support have long since accrued, the last payment being in October 1962. Most of the payments for the support of the children have now accrued. Decedent's son George Almer Newhall III is now over 20 years of age; unless he dies sooner, his support payments terminate on February 28, 1965. Decedent's daughter Caroline is approximately 19-1/2 years old; unless she dies sooner, her support payments terminate on November 10, 1966.

▆ Nor do we find any impropriety in the court's order directing distribution upon final distribution of decedent's estate of the then present value of any future support payments pursuant to Probate Code section 953.1. The trial court took judicial notice of the county clerk's file *In the Matter of the Estate of George A. Newhall, alias, Deceased.* This file which has been brought before us shows an inventory and appraisement filed therein on January 4, 1960, indicating decedent's assets at date of death to be of a value of $597,-636.48. In her opening brief, filed herein on December 14,

1962, defendant asserts that the value of the assets in the estate "is" approximately $247,313. Plaintiff's reply brief did not take issue with this statement. However, it is not clear what defendant means by "value of the assets" in the above statement. As supportive of the statement she refers us to defendant's exhibits 4 (a bookkeeping transcript prepared by the estate's accountant and received in evidence over plaintiff's objection) and 5 (a copy of decedent's federal estate tax return). The latter document obviously includes not only those assets subject to probate but those assets which, while not subject to probate, constitute part of decedent's gross taxable estate. We are furnished with no reconcilement between the inventory and appraisement filed in the probate court and such return, and do not feel called upon to perform this task ourselves.

In a supplementary letter memorandum filed with us after oral argument, defendant asserts that the value of decedent's assets in the estate at the time of trial as computed from the inventory and appraisement is $267,291.28. Again plaintiff takes no issue with the statement. Defendant states that to determine the condition of the estate at the time of trial the inventory and appraisement must be read in conjunction with exhibit 4 above mentioned. The record and the exhibit show that none of the inventoried assets, except certain notes receivable, were listed on exhibit 4. The accountant for the estate testified that exhibit 4 "should reflect what items had gone out of the estate." However, we find nowhere in the record an adjustment of the inventory and appraisement which gives the assets in the estate at the time of trial. Defendant's letter to the court does not enlighten us on this matter. Defendant also advises us in said letter that the inventory and appraisement must be read in conjunction with a certain exhibit filed by defendant executrix with her first account on October 17, 1962. This occurred after the entry of judgment below and could not possibly have been judicially noticed by the trial court. Defendant asserts that "testimony" established that the assets listed in the exhibit attached to the first account of the executrix were the assets in the estate at the time of trial. However she furnishes us with no transcript references to support such statement.[15]

---

[15]In her said letter defendant also submits information concerning the *present* condition of the estate, which she states is in response to our request. She is mistaken. We did not request it and decline to consider it. Our proper function is to review the evidence before the trial court.

It is neither necessary nor possible for us to determine whether the trial court made any adjustment of the inventory value of the estate in the manner now urged upon us. In the light of the inventory and appraisement in the sum of almost $600,000, we think that the court could have well concluded that there would be assets available to meet the payments of support accruing after judgment. Even if it subsequently appeared that the court was mistaken in this conclusion, no injustice would be done other creditors. Distribution to a court-appointed trustee was ordered to be made in due course of administration. If there were insufficient funds to meet this and other obligations of the same class, we must assume that any distribution would be pro rata. Nor do we see any merit in the claim that if the estate were depleted the legatees would be prejudiced. The fact that the continuing obligations of a decedent survive as charges against his estate and may aggregate sufficiently to consume it entirely leaving nothing upon which either testamentary disposition or the laws of succession may operate, does not immunize the estate from the liability. (Cf. *Newman* v. *Burwell, supra,* 216 Cal. 608, 613-614; *Estate of Smith, supra,* 200 Cal. 654, 659-660.) These unfortunate consequences are not uncommon in probate administration generally.

 Finally we dispose of defendant's following claim that the court abused its discretion: In the agreement decedent undertook to assign to plaintiff his life interest in the so-called "grandmother's trust" as security for all support payments (see footnote 4, *ante*); plaintiff failed to take advantage of this security when the support payments were in arrears; therefore, defendant concludes, it was inequitable to allow plaintiff to enforce her claims for such arrearages against decedent's estate when the income from the trust which was intended to be used to pay the arrearages is now lost to the estate (the life interest having terminated) and became vested in decedent's children as remaindermen. The argument has no merit. At the trial plaintiff offered uncontradicted evidence that to the best of her knowledge decedent never executed any assignment. To permit decedent's estate to avoid wholly or in part liability on such grounds would in effect permit the decedent to take advantage of his own wrong (Civ. Code, § 3517). Furthermore as plaintiff correctly points out, the record is devoid of any evidence that the decedent did not receive the trust income during his lifetime and therefore the trial court could have well concluded that

no prejudice to decedent's creditors or to the beneficiaries of his will could have resulted from his apparent failure to assign the interest as security.

The judgment is affirmed as to those portions thereof appealed from.

Bray, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1964.