[Civ. No. 17387.   First Dist., Div. One.   Feb. 24, 1958.]

DOROTHY NEWHALL, Respondent, v. GEORGE A. NEWHALL, Appellant.

Charles F. Jonas, Dinkelspiel & Dinkelspiel and Richard C. Dinkelspiel for Appellant.

Walter C. Chouteau and Young, Rabinowitz & Chouteau for Respondent.

WOOD (Fred B.), J.—In 1951 plaintiff filed a suit for divorce. The interlocutory decree was rendered October 31, 1952, and the final decree November 3, 1953. Meanwhile, the parties negotiated and executed a property settlement agreement dated October 23, 1952. The interlocutory decree ordered and adjudged "that the Property Settlement Agreement between plaintiff and defendant, executed by said parties on October 23, 1952, be and the same is hereby ratified, confirmed and approved, and each of the parties is hereby ordered to do and perform each and every obligation on his or her part required to be performed under said agreement." The final decree ratified, confirmed and approved the agreement in identical terms.

Each decree "further ordered, adjudged and decreed that, pursuant to said Property Settlement Agreement, defendant be and he is hereby ordered and directed as follows:

"(1) To pay to plaintiff the sum of Five Thousand ($5,000) Dollars annually, in twelve (12) equal installments, as his share of the support and maintenance of each of said minor children until his or her majority.

"(2) To pay according to its terms, the present indebtedness evidenced by a certain promissory note in favor of Pacific Mutual Life Insurance Company, having a present principal balance of Eleven Thousand Four Hundred Fifty ($11,450.00) Dollars,* and secured by a deed of trust covering the property owned by the plaintiff and commonly known and designated as 2438 Filbert Street, San Francisco, California.

"(3) To pay to plaintiff, for her support and maintenance the sum of Twenty-two Thousand ($22,000.00) Dollars annually in twelve (12) equal installments, provided that said payments shall cease in the event of the death of plaintiff or of defendant, or in the event of the remarriage of plaintiff; provided, further, that if defendant dies within ten (10) years from October 23, 1952, plaintiff shall continue to receive said payments until October 23, 1962, unless she dies or remarries prior thereto."

---

*This item was $14,000 in the interlocutory decree; $11,450 in the final.

Later, the defendant moved for an order modifying the final decree in the following respects: (1) to reduce the annual payment for the support of each child from $5,000 to $1,800 annually; (2) to reduce the payment for the support of the plaintiff from $22,000 to $9,000 annually. He predicated his motion upon allegedly changed conditions.†

The trial court, after a hearing, denied this motion by an order which recited that the court had "no authority to modify the property settlement agreement and interlocutory and final judgments of divorce." The order of denial further recited that the court so acted "without passing upon the merits of the motion . . . for modification" and awarded plaintiff costs and attorney fees. Defendant has appealed.

The agreement in question bears all the earmarks of an integrated, inseverable property settlement agreement. The parties expressly declared that they mutually desired "that a full and final adjustment of all their property rights be had" and agreed that except as therein specified each party is released from all obligations and liabilities resulting from future acts of the other; each released the other from all liabilities or obligations thereafter incurred by the other and from all claims of either upon the other for support as wife or husband or otherwise "it being understood that this instrument is intended to settle the rights of the parties hereto in all respects"; all property hereafter acquired by either shall be his or her sole and separate property; each has an immediate right to dispose of or bequeath his or her interest in all property belonging to him or her; each waives all right to the estate of the other at death, including the right of administration, family allowance and inheritance under any will; the wife accepts the provisions hereof "in full satisfaction of her right to the community property . . . and in full satisfaction of her right to alimony, support and maintenance." They agreed there "is no community property" but that the wife is entitled to the household furniture and furnishings belonging to either of them (except certain items described in a certain list), a Cadillac and a jeep, certain moneys for her attorney fees and costs and for the services of an accountant employed by her. Certain real properties are characterized as belonging to the wife. He

---

† He claims a diminishing income from $231,000 in 1950 to $59,000 in 1954, coupled with expenditures of $175,699 in 1954, the difference between the last two amounts representing a reduction in net worth; and estimated further losses, and reduction of assets, in 1955.

agrees to pay the encumbrance on one of these properties as it becomes due. He agrees to pay all the community debts listed in a certain schedule. She agrees to quitclaim to him any interest she may have as joint tenant or tenant in common with him in any real property.

In the 13th paragraph of this instrument he agrees to pay to her "for her support and maintenance the sum of . . . $22,000.00 . . . per year, payable in equal monthly installments," such payments to close upon the death of either or upon her remarriage, except that if he dies within ten years she shall continue to receive the payments for the balance of such ten-year period unless she dies or remarries during said period.

The husband's promise to make these payments to the wife was an integral, inseparable part of the property settlement agreement. When "ratified, confirmed and approved" by the interlocutory and final decrees, each of which decreed that "pursuant to said Property Settlement Agreement," defendant is ordered and directed to pay plaintiff the sum of $22,000 annually (using the very words of the 13th paragraph of the agreement except for the substitution of "defendant" for "husband" and "plaintiff" for "wife"), this obligation to pay $22,000 annually became fixed and is not subject to modification except by consent of the parties, the plaintiff and the defendant herein.

This agreement (and these "support" payments) meet the test expressed in *Plumer* v. *Plumer*, 48 Cal.2d 820 [313 P.2d 549]: "An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitutes reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. Such an agreement would be destroyed by subsequent modification of a support order based thereon, without the consent of the parties. (*Dexter* v. *Dexter, supra,* 42 Cal.2d at 41-42 [265 P.2d 873]; *Messenger* v. *Messenger, supra,* 46 Cal.2d at 626, 627-628; *Herda* v. *Herda, ante,* pp. 228, 231-232 [308 P.2d 705].) It is immaterial whether or not the marital property is divided equally. (*Dexter* v. *Dexter, supra,* 42 Cal.2d at 43; *Messenger* v. *Messenger, supra,* 46 Cal.2d at 627-628.) It is immaterial that the amount of the marital property is small. (*Herda* v. *Herda, supra, ante,* at p. 232.) It is likewise immaterial that the agreement calls for payments for

'support' or 'alimony.' (*Messenger* v. *Messenger, supra,* 46 Cal.2d at 624-625 and cases there cited.)

"A support order based upon an integrated agreement may be modified if the parties so provide. (*Flynn* v. *Flynn,* 42 Cal.2d 55, 61 [265 P.2d 865].) Absent such a provision, it cannot. An agreement providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement, will be deemed conclusive evidence that the parties intended an integrated agreement. (*Messenger* v. *Messenger, supra,* 46 Cal.2d at 628; *Anderson* v. *Mart,* 47 Cal.2d 274, 279 [303 P.2d 539]; *Herda* v. *Herda, supra, ante,* at p. 232.) Even absent one or more of the foregoing provisions, there may be other proof that the parties intended an integrated agreement. (*Dexter* v. *Dexter, supra,* 42 Cal. at 41.) Thus, the parties may be uncertain as to the value or legal ownership of property. They may be uncertain which of them is entitled to a divorce and on what grounds and therefore uncertain as to their legal rights with respect to support and the division of property. An agreement for a specified division of property and specified support payments settling such uncertainties is integrated in the absence of convincing proof that the parties intended it to be severable. (See *Dexter* v. *Dexter, supra,* 42 Cal.2d at 43; *Messenger* v. *Messenger, supra,* 46 Cal.2d at 627-628.)" (Pp. 824-825.)

Defendant says our case does not meet this test because no property was divided. We are not convinced. The following provisions of the agreement are consistent with the concept that this agreement marks the culmination of a division of their properties: "Husband and Wife *acknowledge* that there *is* no community property"; the wife "*now* owns as her separate property" a certain parcel of realty; the husband "heretofore has conveyed to wife and wife *now* owns as her separate property" a certain other parcel. (Emphasis added.) This view that a division of property was involved receives support and emphasis from the clause whereby she "agrees to quitclaim to" him "any and all interest which she may now have" as "joint tenant or tenant in common with" him in any real property.

Moreover, the Supreme Court did not say in the Plumer case that there must be an actual division of property

as such, to constitute an integrated, inseverable agreement. The parties may be uncertain as to the legal ownership of property. They may relinquish claims which either potentially has against the other. In *Lane* v. *Bradley,* 124 Cal. App.2d 661, 666 [268 P.2d 1092], ". . . a showing that there was no community property did not exclude the possibility that the payments might be part of an integrated bargain so as to prevent them from having the character of alimony only." (See also *Ettlinger* v. *Ettlinger,* 3 Cal.2d 172 [44 P.2d 540].)

Defendant further claims that changes effected in section 139 of the Civil Code in 1951 remove the basis for the line of decisions which culminated in *Plumer* v. *Plumer, supra,* 48 Cal.2d 820. He invokes *Hilton* v. *McNitt,* 49 Cal.2d 79 [315 P.2d 1]. The Hilton case holds, merely, that the last sentence of section 139, Civil Code, as amended in 1951, applies to a property settlement agreement whether it be integrated and inseverable or not. Accordingly, monthly payments for support and maintenance of one party by the other terminate upon the death of the obligor or remarriage of the obligee *unless* the parties otherwise agree in writing. That, obviously, is a mere rule of interpretation of the intent of the parties, not a legislative mandate that they agree upon a particular result. It has no bearing upon the facts of our case.

Defendant argues by analogy that if the last sentence of the 1951 amendment of section 139 applies to an integrated property settlement agreement then it must follow that the next to the last sentence of that section as amended in 1951 likewise applies and confers upon the courts the power at any time to revoke or modify a judgment making an allowance, whether or not predicated upon an integrated agreement. We derive no such legislative intent therefrom. That was a mere recasting of the power to modify (previously expressed in these words: "the court may from time to time, modify its orders in these respects") in adjustment to the changes being made in the forepart of the section, enlarging its scope to embrace the duty of a wife to support the husband in addition to his obligation to support her.

Significantly, our Supreme Court in *Plumer* v. *Plumer, supra,* 48 Cal.2d 820, discussing a post-1951 agreement, indicated no awareness of any 1951 legislative intent to subject all integrated property settlement agreements to judicial modification "at any time."

We attach no particular significance to the fact that the

interlocutory and final decrees spelled out (in the very terms of the agreement) the custody of the children, the husband's support obligations, and his promise to pay off the encumbrance on the wife's realty, but did not similarly spell out all other obligations of the parties, covering the latter simply by decreeing that the property settlement agreement "be and the same is hereby ratified, confirmed and approved, and each of the parties is hereby ordered to do and perform each and every obligation on his or her part required to be performed under said agreement." In this respect this decree seems to have followed the form used in *Herda* v. *Herda,* 48 Cal.2d 228 [308 P.2d 705], and *Messenger* v. *Messenger,* 46 Cal.2d 619 [297 P.2d 988], in each of which no power to modify was found. The same result obtained in *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], where the decree "approved" the agreement and ordered certain payments to be made "pursuant to its terms."

The principles we have been discussing apply also to the defendant's promise to pay to plaintiff "$5,000.00 . . . annually . . . *as his share* of the support and maintenance of each child until his or her majority." (Emphasis added.) They agreed that the care, custody and control of their two minor children "shall be awarded jointly to wife and husband, with physical custody in wife," subject to the right of the husband to visit and take the children at reasonable times. Both of these provisions (custody and support of the children) were prefaced by the words: "subject to any future order of any court having jurisdiction of the subject matter of the following, it is agreed: . . ." But for this clause it would be clear that the requirement for the $5,000 annual payments could not be modified downward though it could be modified upward upon a showing of an appropriate change in circumstances (*Puckett* v. *Puckett,* 21 Cal.2d 833, 843 [136 P.2d 1]) unless incident to a change in the custody of the children.

The words "subject to any future order of any court having jurisdiction of the subject matter of the following" (custody and support of the children) recognized the power of the court to approve the agreement itself, the continuing jurisdiction of the court to modify the custody provisions, and the power to alter the child support provisions, upward only unless incident to a change of custody. That is all that the quoted words reasonably mean. They include no words of grant, no words conferring or reserving power to modify

any of the terms of the agreement. The quoted words mean "subject to" whatever power a court of competent jurisdiction may in its own right have (not derived from this agreement) to modify these child custody and support provisions of this integrated, inseverable property settlement agreement.

This reasoning finds support in *Anderson* v. *Mart,* 47 Cal. 2d 274 [303 P.2d 539]. The parties in their agreement declared that they recognized that " 'they can control the custody of the minor child of the parties hereto only to the extent that their agreement coincides with the order which any Court of competent jurisdiction may make for the best interest of said child. Subject to such recognized premise of law, the parties hereto agree that the Wife shall have the care, custody and control of the minor child, with reasonable right of visitation vested in Husband.' " (P. 279.) They then provided: " 'Subject to approval by any Court of competent jurisdiction, Husband agrees to pay to Wife the sum of Sixty ($60.00) Dollars per month as and for the support and maintenance of Wife and the minor child . . . .' " (P. 279.) Of this, the court said: "The contention that the provision that the payments were to be subject to the approval of the court establishes that they were alimony is likewise without merit. Thus the parties had expressly recognized that any agreement affecting the interests of their child was subject to the approval of the court, and since the monthly payments were to be made for the support of both plaintiff and the child, it was appropriate that a provision for court approval should be included. The fact that the parties recognized that they could not by their agreement control the court's power to make orders for the support of their child in no way conflicts with their clearly expressed intention that as between themselves their agreement should be final and conclusive." (Pp. 280-281.)

We attach no significance to the fact that here the child support and the wife support payments are expressed separately, not merged in a single specified amount per month. If they were so merged and the decree were silent as to allocation, the trial court could determine the allocation in subsequent proceedings. (*Anderson* v. *Mart, supra,* 47 Cal.2d 274, 283-284.)

Defendant invokes a number of cases which we do not find applicable. In *Streeter* v. *Streeter,* 67 Cal.App.2d 138 [153 P.2d 441], the court allowed modification of child support payments because the implied finding of the court below that

the award was for the maintenance of the child and not a part of the property settlement agreement was supported by the evidence. In *Bias* v. *Bias*, 142 Cal.App.2d 344, 348 [298 P.2d 102], a revision of the child's support payments downward was affirmed because the appellant had not presented a record from which a determination that the trial judge erroneously interpreted the agreement could be made. In *Shepard* v. *Shepard*, 116 Cal.App.2d 594 [254 P.2d 120], and in *Scarlett* v. *Scarlett*, 151 Cal.App.2d 237 [311 P.2d 188], the fact that the payments for child support were separately stated was a feature that weighed with the court in determining that the parties did not intend to make the child support provisions as integral, nonseverable part of the property settlement agreement. However appropriate that may have been in respect to those particular agreements, we do not find that reasoning applicable to the agreement before us, in the light of the Supreme Court decisions we have cited and rely upon.

There remains a question concerning the validity of an award to plaintiff of costs and attorney fees in the proceedings had upon defendant's motion for modification of the final decree.

In an action for divorce or for the custody, support, maintenance or education of children, the court may order the husband or wife, father or mother, "to pay such amount as may be reasonably necessary for the cost of maintaining or defending the action and for attorney's fees . . . In respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorney's fees as may be reasonably necessary to maintain or defend any subsequent proceeding therein . . ." (Civ. Code, § 137.3.)

Clearly, the court had authority to make the questioned award unless plaintiff's execution of the property settlement agreement operated as a waiver and relinquishment of any right she might otherwise have to receive such an award. It did so operate as concerns defendant's motion to reduce the payments for plaintiff's support, and plaintiff's resistance to that motion. (*Grolla* v. *Grolla*, 151 Cal.App.2d 253 [311 P.2d 547].)

However, his motion to reduce the payments for support of the children, and her resistance thereto, are in a different category. In that regard, she acts as a representative of the children, whose rights can not be adversely affected by agreement of the parents; nor can the state's interest and concern

for the welfare and maintenance of the children be adversely affected by the provisions of any such agreement. (*Allen v. Allen,* 138 Cal.App.2d 706, 710-711 [292 P.2d 581].)

We conclude that the court had jurisdiction to award attorney fees and costs in respect to that portion of the proceeding which pertained to the children. But the order making the award was general in terms, not limited to this aspect of the case. It should be appropriately modified.

That portion of the order which denied defendant's motion to modify the final decree is affirmed. That portion which awarded plaintiff attorney fees, costs and expenses is reversed with directions that further proceedings may be had for determination of the question what attorney fees, costs and expenses, if any, should be awarded plaintiff in respect to the litigation of defendant's motion to reduce the amount of the payments for the support of the children. Plaintiff-respondent will recover her costs upon this appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied March 26, 1958, and appellant's petition for a hearing by the Supreme Court was denied April 23, 1958.