[Civ. No. 28122. Second Dist., Div. Four. April 23, 1964.]

SID DAVIDSON, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LAUREEN DAVIDSON, Real Party in Interest.

Donald C. Gallagher and C. Lauren Maltby, for Petitioner.

William B. McKesson, District Attorney, Harry Wood and Wilbur A. Sweeters, Deputy District Attorneys, for Respondent.

No appearance for Real Party in Interest.

KINGSLEY, J.—On February 7, 1963, petitioner and his then wife (a divorce action between them being then pending) entered into what they denominated a "Separation, Support and Property Settlement Agreement." Following substantially the form suggested in "Family Law for California Lawyers," published in 1956 by the Committee on Continuing Education of The State Bar of California, this agreement recites that "(d) The parties hereto desire, by this Agreement, to make a complete and final settlement of all of their property, now owned by the parties hereto, and property which may hereafter be acquired by either of them,

and to provide for the future support of the minor child."
The parties then, in paragraphs IV and V, provide for a
division of the community property and for the assumption
by the husband of all community debts and income tax liabil-
ities, assigning to the husband "as a material inducement"
for his assumption of these liabilities, any income tax refund
which might be receivable. In paragraph VI, the wife waived
alimony. As to child support, the agreement provides:

"VII

"SUPPORT AND CUSTODY OF MINOR CHILD:

"(a) Subject to the orders of any Court of competent
jurisdiction, Wife shall have custody of the minor child of
the parties, to wit: JANICE MICHEL, subject to the right
of Husband to visit the said minor child on Wednesday of
each and every week between the hours of 5:00 P.M. and 7:30
P.M., and to have physical possession of said minor child on
alternate week-ends from 10:00 A.M. Saturday until 7:30
P.M. Sunday.

"In addition to the foregoing, the parties hereby agree that
each will be entitled to one-half (½) day physical custody
of said minor child, on all legal and religious holidays. Fur-
ther, Husband will be entitled to an additional evening's
visitation for each week he is unable to exercise his aforesaid
visitation rights, due to his absence from the city for reasons
of business.

"(b) Husband agrees to pay to Wife, for the support,
care, education and maintenance of the aforementioned JAN-
ICE MICHEL, the sum of One hundred eight and 33/100
Dollars (108.33) per month. Such payments shall be payable
at the rate of Twenty-five dollars ($25.00) per week, com-
mencing on the 17th day of August 1962, and continuing
each and every Friday thereafter through the minority of
said child, or until said child dies or becomes self-supporting,
unless otherwise agreed upon by the parties, or as may other-
wise be hereafter ordered by the Court."

In due time, the court granted the wife an uncontested
interlocutory decree of divorce. That decree, after the
standard paragraph stating the court's intention to enter a
final decree in favor of the wife, continued as follows:

"2. That the custody of the minor child of the parties,
JANICE MICHEL DAVIDSON, born December 30, 1956, is award-
ed to plaintiff, subject to defendant's right of reasonable
visitation which shall be defined to mean that defendant

shall have the right to visit the said minor child on Wednesday of each week between the hours of 5:00 P.M. and 7:30 P.M. and to have physical possession of the said minor child on alternate weekends from 10:00 A.M. Saturday until 7:30 P.M. Sunday, commencing Saturday, February 16, 1963; defendant shall further be entitled to the physical possession of the said child for half of each legal and religious holiday.

"3. That the Property Settlement Agreement introduced into evidence is approved.

"4. That defendant is ordered to pay for the support and maintenance of the minor child of the parties the sum of $108.33 per month, payable at the rate of $25.00 per week, first payment commencing Friday, February 15, 1963, and thereafter on Friday of each and every week;

"That all child support payments be paid through the office of the Court Trustee, P. O. Box 3544 Terminal Annex, Los Angeles 54, California. Payments must be made by certified check or money order and must be made payable to the Court Trustee;

"The plaintiff's home address is 363 North Orange Drive, Los Angeles 36, California;

"The defendant's home address is 3833 Huron Street, Culver City, California;

"Defendant's employer's name is unknown.

"Each party shall notify the Court Trustee, in writing, of any change of address in his or her residence or business within five days after any such change.

"The attorney for the plaintiff is directed to cause a copy of this Order to be personally served upon the defendant and to promptly file a return of service thereof."

The husband being in default in the payments thus ordered, contempt proceedings were instituted, resulting in a judgment of contempt and the imposition of a five-day jail sentence. The present proceedings in certiorari followed.

The sole point urged as a basis for annulment of the order is petitioner's contention that the child support provisions of the interlocutory decree of divorce are based on and incorporate an "integrated" property settlement agreement and are, therefore, not enforceable by contempt proceedings.

It is now settled in California that, where provisions either for alimony or for child support are parts of an "integrated" settlement agreement, and a divorce decree is "based on" such an agreement, the use of contempt proceedings to enforce the support or alimony provisions violates the

constitutional prohibition against imprisonment for debt. (*Plumer* v. *Superior Court* (1958) 50 Cal.2d 631 [328 P.2d 193]; *Bradley* v. *Superior Court* (1957) 48 Cal.2d 509 [310 P.2d 364].) But this doctrine is not applicable in the instant case for two reasons, namely: (1) The agreement between petitioner and his wife was not "integrated"; and (2) the interlocutory decree of divorce was not "based on" that agreement.

I

The multitude of cases which have passed on the question of whether or not an agreement is integrated make it clear that each case must be decided on its own complex of facts. ■ Here, all signs point to a nonintegrated character. Unlike *Plumer*, where the agreement expressed an intent to determine finally "all marital rights," the agreement here expressed such an intent only as to "property," with the reference to child support grammatically separated. The provisions as to division of property and assumption of debts are set forth in separate paragraphs, with no cross-reference between them and the paragraph (above quoted) concerning child support. Nothing in the child support paragraph suggests that its covenants are "in consideration" of any other provision—an omission given special significance by the fact that, where (as in paragraph V which deals with the assumption of debts) such cross-consideration was intended, the parties spelled it out expressly and with great precision. The child support and custody provisions are expressly set out as being "Subject to the orders of any Court of competent jurisdiction" and as being continuing only "unless ... as may otherwise be hereafter ordered by the Court."[1]

■ The order of the trial court impliedly constitutes a finding that the agreement was nonintegrated. ■ Where, as here, no extrinsic evidence was presented to the trial court, the trial court's construction of the agreement is not conclusive on this court. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].) But if, as we have heretofore pointed out is true in this case, such construction is reasonable, it should be accepted by an appellate court. (*Estate of Sharff* (1963) 219 Cal.App.2d 128, 132 [33 Cal.Rptr. 52].) ■ The divorce court is not bound to accept the parties'

[1]Further, as bearing on the intent of the parties, it may not be without significance that the agreement followed by the draftsman here was presented by its authors as being nonintegrated.

agreement with respect to child support, but may reject it and make its own order. And the order remains that of the court even though the terms of the order, as to amounts and times of payment, are identical with those of the agreement. Such was the case here. While the divorce decree, in paragraph 3, "approved" the agreement, the provisions as to child custody and support appear in separate paragraphs, neither of which refer in any way to the agreement. Unlike cases where the decree recites that the orders are "pursuant to" the agreement, the decree here is, in terms, totally independent of any agreement made by the parties. Furthermore, the fact that the order provides, where the agreement does not, for payments to be made through the office of the court trustee (thus evidencing an intent to invoke the powers of that officer as set out in the rules of the trial court), and the fact that the court expressly ordered that a copy of the decree by served personally on defendant, indicate a judicial intent to exercise its own statutory powers and not merely to enforce a private contract, since neither intervention of the court trustee nor personal service would be normal incidents of a decree "based on" a settlement agreement.

So important is it to the public policy of this state that the duty of child support be maintained and enforced, that it would require language far different from that used by the court here before we would attribute to it an intention to divest itself of the important sanction of contempt as a means to insure the continued satisfaction of a father's legal and moral duty to support of his child.

The order under review is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied May 8, 1964, and petitioner's application for a hearing by the Supreme Court was denied June 16, 1964.