[Civ. No. 23910. First Dist., Div. One. Jan. 31, 1968.]

GEORGIA BAYLESS GARRETT, Plaintiff and Respondent, v. DAN L. GARRETT, JR., Defendant and Appellant.

Frederick E. Watson for Defendant and Appellant.

Louis Francis for Plaintiff and Respondent.

MOLINARI, P. J.—Plaintiff wife and defendant husband were divorced in 1955. On April 22, 1964, the court ordered defendant to show cause why defendant should not be adjudged guilty of contempt for non-compliance with the alimony and child support provisions of the interlocutory decree and final judgment of divorce.[1] ▮▮ ▮▮▮▮ The court declined to hold defendant in contempt, but ordered him to pay plaintiff an arrearage of $5,700, attorney's fees of $1,250, and $10 costs. Defendant appeals.[2]

### Contentions

Defendant contends that the parties, on February 18, 1954, entered into a court-approved integrated property settlement agreement depriving the court of jurisdiction to enforce the support provisions of the decree by means of contempt proceedings. He also contends that since the agreement of the parties did not allow plaintiff attorney's fees, the court was without power to modify the agreement by awarding plaintiff attorney's fees and costs in the instant proceeding.

### Facts

Plaintiff filed her complaint for divorce on February 15, 1954, alleging extreme cruelty and praying for a divorce decree, custody of the two minor children of the marriage, reasonable support and maintenance for plaintiff and her children, and an equitable division of the community

---

[1]Defendant's motions to quash (2) were denied.

[2]The order is appealable as a special order after judgment directing the payment of money. (*Heller* v. *Heller*, 230 Cal.App.2d 679, 682 [41 Cal.Rptr. 177].)

property.[3] On February 18, 1954, the parties entered into a property settlement agreement prepared by plaintiff's attorney, Paul Schumann, which awarded plaintiff the family house, all furniture and household effects, and an automobile; provided that defendant maintain life insurance policies on his life designating the two minor children as irrevocable beneficiaries; awarded defendant, who is an attorney, his office equipment and law books; and awarded all other property, community and separate, to the party having possession or control of the same. The agreement further provided that plaintiff should have custody of the children, subject to defendant's reasonable visitation rights; that defendant should pay $100 per month for the support of each of the children and $100 per month for the support of plaintiff until her death or remarriage. The agreement also adjusted the obligations of the parties, and provided in paragraph XI: "Except as herein provided, each of the parties hereby releases and discharges the other from all claims of every kind or character and all liabilities arising from the marital status, and each party hereto waives the right to participate in the estate of the other by reason of the marital relationship."

The parties prefaced the agreement with a recital that they desired "to settle and adjust for all time all of their property rights and claims and all other rights and liabilities and all reciprocal rights in and to all community property of every kind and nature now owned or possessed by them, . . ." and that they desired "to settle all rights of Wife to attorney's fees, support and maintenance for wife and support and maintenance for the minor children of the parties, court costs, as well as every other matter of dispute which may or can arise in the future between the said parties with relation to said financial and property rights, past, present or future, including any rights of wife to support or maintenance for herself or the minor children of the parties hereto, . . ."

Defendant did not appear at the trial of the divorce action.[4] Only plaintiff and her corroborating witness testified. The hearing took a few minutes and there was no evidence concerning plaintiff's financial needs or the existence or extent of the parties' property.

---

[3]The complaint did not allege any facts in support of an alimony award to the wife or a support award to the children.

[4]Defendant had previously filed an unverified answer and had entered into a stipulation waiving notice of trial, findings of fact, conclusions of law, and the right to move for new trial and to appeal.

Schumann testified at the contempt proceedings that he advised the court at the divorce hearing that the parties had entered into a property settlement agreement but did not give the agreement itself to the court to read or look at because he wished the court to retain jurisdiction to enforce through contempt the support provisions; and that the judge asked the plaintiff, who was then on the stand, if she was satisfied, to which plaintiff responded in the affirmative. According to Schumann the trial judge, by his question, meant whether plaintiff was satisfied "in the overall as far as money is concerned." Schumann also testified that he had drafted the agreement according to the wishes of both plaintiff and defendant and that he was satisfied that the agreement was fair and equitable.

Schumann had agreed with defendant before the divorce hearing that defendant would allow the matter to go by default and that the support provisions in the decree would be the same as those in the property settlement agreement. The interlocutory decree of divorce contains precisely the same provisions as does the property settlement agreement concerning child custody, child support, and support for plaintiff, except that the agreement characterizes the latter payments as "support and maintenance" whereas the decree calls for "alimony and support." The final judgment of divorce incorporates the interlocutory decree by reference.

### Is the Property Settlement Agreement an Integrated Agreement?

*Yes.* When there is no conflicting extrinsic evidence, the question whether a property settlement agreement is integrated is one of law. (*Messenger* v. *Messenger,* 46 Cal.2d 619, 626 [297 P.2d 988]; *Fox* v. *Fox,* 42 Cal.2d 49, 52-53 [265 P.2d 881]; *Biagi* v. *Biagi,* 233 Cal.App.2d 624, 628 [43 Cal.Rptr. 707].) The intent of the parties, as manifested in the written agreement, controls. (*Biagi* v. *Biagi, supra,* at p. 629; *Roberts* v. *Roberts,* 226 Cal.App.2d 507, 512 [38 Cal.Rptr. 176].)

 The parties explicitly intended this agreement "to settle and adjust for all time" all of their rights and liabilities incident to the destruction of the marriage. This fact is evidenced by the recitals in the preface and by the all-encompassing nature of the agreement, which covers all of the property of the parties, all of their debts, child custody and support, and support for the wife. The "sense of finality" (*Ebert* v. *Ebert,* 185 Cal.App.2d 293, 299 [8 Cal.Rptr. 203]) arising

from the parties' phrase "adjust for all time" is strong evidence of their intent to settle all of their rights once and for all. (See *Ebert* v. *Ebert, supra.*) Also significant is the fact that they expressly released and discharged each other from "all claims of every kind or character and all liabilities arising from the marital status." (See *DiMarco* v. *DiMarco*, 60 Cal.2d 387, 392 [33 Cal.Rptr. 610, 385 P.2d 2].) The fact that the payments for support of the wife were to terminate on her death or remarriage does not require a finding of severability (*Ebert* v. *Ebert, supra*, 185 Cal.App.2d 293, 299-300 [8 Cal. Rptr. 203]), nor does the characterization of the payments as "alimony" in the divorce decree (*Messenger* v. *Messenger, supra*, 46 Cal.2d at p. 624; *Fox* v. *Fox, supra*, 42 Cal.2d at p. 53; *Biagi* v. *Biagi, supra*, 233 Cal.App.2d at p. 629), nor the separation of support and property division provisions (*Newhall* v. *Newhall*, 157 Cal.App.2d 786, 795 [321 P.2d 818]).

The parties did not expressly state that the support and property provisions constituted reciprocal consideration for each other, but did state in the recitals that "in consideration of the premises and of the mutual covenants and agreements hereof, said parties hereto mutually understand and agree as follows: . . ." This language is similar to that used in the agreement in *Campbell* v. *Campbell*, 178 Cal.App.2d 77, 80-82 [2 Cal.Rptr. 710], which holds an agreement to be integrated that stated that all its provisions were made " 'in consideration of the mutual covenants and agreements hereinafter contained. . . .' "

As stated in *Biagi* v. *Biagi, supra*, 233 Cal.App.2d at page 629, "the courts have been concerned with whether the agreement is in reality a settlement of property rights which includes as an integral part a support provision, . . . contained within the agreement." Here it is plain from the four corners of the agreement that the parties intended a final and complete adjustment of all of their property and personal rights incident to the marital relationship. The property settlement agreement was therefore an integrated agreement and has all of the legal characteristics of such an agreement.

*Is there a Merger of the Property Settlement
Agreement into the Judgment of Divorce?*

■ *No. Flynn* v. *Flynn*, 42 Cal.2d 55, 58 [265 P.2d 865], states the pertinent principles applicable to the merger of a property settlement agreement into a decree of divorce: "Merger is the substitution of rights and duties under the judgment or the decree for those under the agreement or cause

of action sued upon. [Citations.] . . . [I]t is first necessary to determine whether the parties and the court intended a merger. ▉ If the agreement is expressly set out in the decree, and the court orders that it be performed, it is clear that a merger is intended. [Citations.] On the other hand, the parties may intend only to have the validity of the agreement established, and not to have it become a part of the decree enforceable as such. [Citations.] ▉ Whether or not a merger is intended, the agreement may be incorporated into the decree either expressly or by reference. ▉ If a merger is not intended, the purpose of incorporation will be only to identify the agreement so as to render its validity res judicata in any subsequent action based upon it. [Citations.] If a merger is intended, the purpose of incorporation is, of course, to make the agreement an operative part of the decree.''

The *Flynn* case recognizes that where, as here, there is no express order to perform all or part of the agreement, it may be difficult to determine whether or not a merger was intended. Accordingly, in *Jackson* v. *Jackson*, 253 Cal.App.2d 1026, 1034 [62 Cal.Rptr. 121], we noted that the courts, in determining the intent of the parties and the intent of the court rendering the decree, have considered the following factors: recitals in the agreement indicating that it is to be presented to the trial court; physical incorporation of the words of the agreement in either the body of the decree or as an exhibit attached thereto; the extent to which the decree expressly purports to incorporate the provisions of the agreement; the extent to which the decree purports to order the performance of the terms of the agreement.

▉ In the present case the agreement is not incorporated into the decree expressly or by reference. There are no recitals in the agreement indicating that it is to be presented to the trial court; there is no physical incorporation of the words of the agreement either in the body of the decree or as an exhibit; the decree does not expressly purport to incorporate the provisions of the agreement; and the decree does not purport to order the performance of the terms of the agreement. Defendant, moreover, does not claim that he intended a merger or that the decree should incorporate the agreement. He merely asserts that the parties agreed that the provisions of the decree with respect to support should be the same as those of the agreement. We conclude that there is no merger.

## Did the Divorce Court Have Jurisdiction to Determine the Arrearages?

**■■■** *Yes.* The 1967 amendments to Civil Code, section 139 make child support and support payments to a spouse law-imposed obligations that may be modified or revoked, and enforced by contempt proceedings, notwithstanding that such support is provided in a property settlement agreement, whether such agreement be integrated or not. (Civ. Code, § 139.) These amendments, however, are not retroactive and do not apply to the instant case. (Civ. Code, § 139.) Accordingly, we must look to the law applicable to the subject 1954 property settlement agreement.

In the instant case, although the court below declined to hold defendant in contempt it made an order in the contempt proceedings that defendant pay the arrearages for alimony and child support it found to be due. In *Bradley* v. *Superior Court*, 48 Cal.2d 509, 518 [310 P.2d 634], it was held that contempt is not available as a remedy to enforce either the wife or child support provisions of an integrated property settlement agreement incorporated in a divorce decree. (See *Plumer* v. *Superior Court*, 50 Cal.2d 631, 635-637 [328 P.2d 193].) It was there stated that ''Neither the court nor the Legislature may impair the obligation of a valid contract (Cal. Const., art I, §§ 1, 16) and a court cannot lawfully disregard the provisions of such contract or deny to either party his rights thereunder. [Citations.] '' (P. 519.)

The principle of the *Bradley* case is not restricted to situations where the property settlement agreement has been merged or incorporated into the decree of divorce, but applies where the issue of the validity of the agreement has been previously presented to the divorce court. **■■■** While no court sanction is a prerequisite to the validity of an integrated property settlement agreement so as to entitle the parties to bring an independent action to enforce its terms, such an agreement can have no effect or control in the divorce court, as against the power of that court to award support and dispose of community property, until sanctioned and adopted by the court in whole or in part. (*Sanborn* v. *Sanborn,* 3 Cal.App. 2d 437, 442 [39 P.2d 830].) This rule does not require that such an agreement be incorporated in the divorce decree but demands only that it be *presented* to the court in order to enable the court to determine that it is fair and equitable and

that it was not tainted by fraud, compulsion, collusion, undue influence or *contra bonos mores*. (*Sanborn* v. *Sanborn, supra,* pp. 441-442; *Majors* v. *Majors,* 70 Cal.App.2d 619, 626-627 [161 P.2d 494]; *Adams* v. *Adams,* 29 Cal.2d 621, 624-625, 628 [177 P.2d 265]; *Patton* v. *Patton,* 32 Cal.2d 520, 523-524 [196 P.2d 909]. See *Flynn* v. *Flynn, supra,* 42 Cal.2d at p. 58.)

If there is no reason for questioning the validity or fairness of the agreement the court cannot withhold its approval insofar as the disposition of the community property and the support of the wife are concerned. (*Majors* v. *Majors, supra,* at p. 626; *Adams* v. *Adams, supra,* at p. 628; *Patton* v. *Patton, supra,* at p. 524.) Insofar as the support of the minor children of the marriage is concerned, the trial court is not bound to accept the parties' agreement even if there was no overreaching, but may reject it and make its own order. (*Davidson* v. *Superior Court,* 226 Cal.App.2d 625, 629-630 [38 Cal.Rptr. 274]; *Young* v. *Superior Court,* 105 Cal. App.2d 65, 67-68 [233 P.2d 39]; *Rosher* v. *Superior Court,* 9 Cal.2d 556 [71 P.2d 918]; *Karlslyst* v. *Frazier,* 213 Cal. 377, 381 [2 P.2d 362].) When the agreement is approved, however, it becomes a binding contract between the parties and its validity is rendered res judicata in any subsequent action or proceeding based upon it. (*Flynn* v. *Flynn, supra,* 42 Cal.2d at p. 58; *Bradley* v. *Superior Court, supra,* 48 Cal.2d at pp. 518, 522-523; *Howarth* v. *Howarth,* 81 Cal.App.2d 266, 272 [183 P.2d 670]; *Baxter* v. *Baxter,* 3 Cal.App.2d 676, 685 [40 P.2d 536]; and see *Sanborn* v. *Sanborn, supra,* 3 Cal.App. 2d at pp. 442, 443.) The court cannot modify it except to provide adequate support for the protection of the interests of the children. (*Plumer* v. *Superior Court, supra,* 50 Cal.2d at pp. 636-637; *Van Dyke* v. *Van Dyke,* 126 Cal.App.2d 238, 244 [271 P.2d 910]; *Streeter* v. *Streeter,* 67 Cal.App.2d 138, 144 [153 P.2d 441].) With respect to property settlement agreements entered into before September 18, 1959 where the obligation to pay an agreed amount for child support is made an integral part of a property settlement agreement, the payments are not subject to reduction, but they may be increased by the court if the child's welfare requires it, without regard to what the liabilities of the parties may be, or their rights *inter se* under the agreement. (*Puckett* v. *Puckett,* 21 Cal.2d 833, 843 [136 P.2d 1]; *Plumer* v. *Superior Court, supra,* at p.

418

637; *Hinman* v. *Hinman*, 137 Cal.App.2d 739, 743 [290 P.2d 596] ; *Van Dyke* v. *Van Dyke, supra.*)[5]

In the instant case it takes some straining to conclude that the judge of the divorce court approved the property settlement agreement, since he did not read it nor was he advised of its terms. However, since it is undisputed that the property settlement was fair and equitable and no charge or suggestion was made to the court that it had been obtained by fraud, collusion, coercion or undue influence, an inference can be drawn that it was presented to and approved by the court in view of the circumstance that the trial judge was advised of its existence and plaintiff testified, in response to the judge's inquiry, that she was satisfied with the agreement and the money arrangements. Such sanction, however, did not extend to the whole of the agreement in view of the order made in the decree for alimony and child custody and support.

As pointed out above the court was not required to approve the provisions for child custody and support, but it could make its own order. Such order, when made, became that of the court even though its terms were identical to those of the agreement. (See *Davidson* v. *Superior Court, supra*, at p. 630.) When the divorce court made the order in its decree for custody and child support it in effect disapproved such provisions in the agreement and chose to make its own provision. If it did not so intend it would have been idle for the court to make such orders since defendant was already bound by such provisions in the integrated agreement. Since the terms of the order as to amounts and times of payment are identical with those of the agreement, it is reasonable to assume that the court intended the child support and custody provisions to be law-imposed rather than contractual obligations. The record discloses that this was plaintiff's intent. The action taken by the court, moreover, was done with the consent and acquiescense of defendant. It is significant to note that the decree contains over defendant's signature the following statement: ''Agreed to and approved both as to form and contents.'' Since this statement was apparently signed prior to the divorce hearing it is clear that defendant intended that the subject provisions be adopted by the court notwithstand-

---

[5]The rule set forth in these cases was altered by a 1959 amendment to Civil Code, section 139. As a result of this and subsequent amendments the section now provides that child support payments may be reduced, increased or revoked even if based upon an integrated property settlement agreement.

ing the provisions of the integrated property settlement agreement.

■ With respect to the provisions for the support of the wife provided for in the agreement, the trial court was not empowered to modify or reject them without the consent and acquiescense of defendant. Defendant, however, gave his consent when he agreed to the terms of the decree and approved it both as to form and contents. This was tantamount to an agreement between the parties, approved by the court, that the agreement be modified to the extent of severing the support provisions from the agreement, thus making them law-imposed rather than contractual obligations. (See *Newhall* v. *Newhall, supra,* 157 Cal.App.2d at p. 792; *Ebert* v. *Ebert, supra,* 185 Cal.App.2d at p. 298.)

In view of the foregoing the wife and child support payments were no longer an integral part of the adjustment of property rights but were severable. As such they were subject to enforcement by contempt proceedings.[6] (*Bradley* v. *Superior Court, supra,* 48 Cal.2d at p. 521, 522; see *Hough* v. *Hough,* 26 Cal.2d 605, 614 [160 P.2d 15]; *Shogren* v. *Superior Court,* 93 Cal.App.2d 356, 358 [209 P.2d 108]; see *Flynn* v. *Flynn, supra,* 42 Cal.2d at p. 61; *Miller* v. *Superior Court,* 9 Cal.2d 733, 740 [72 P.2d 868]; *Hogarty* v. *Hogarty,* 188 Cal. 625, 628 [206 P. 79].)

*Is Plaintiff Entitled to Attorney Fees and Costs?*

■ *No.* The court had power to award attorney fees and costs unless plaintiff waived such fees and costs by her above agreement. (Civ. Code, § 137.3; *Taliaferro* v. *Taliaferro,* 200 Cal.App.2d 190, 197 [19 Cal.Rptr. 220]; *Grolla* v. *Grolla,* 151 Cal.App.2d 253, 260 [311 P.2d 547]; *Patton* v. *Patton, supra,* 32 Cal.2d at pp. 522-525; *Fox* v. *Fox, supra,* 42 Cal.2d at p. 53; see *Gottlieb* v. *Gottlieb,* 155 Cal.App.2d 715, 719, 720 [318 P.2d 763].)

The prefatory recitals hereinbefore set out verbatim are an express waiver by plaintiff of the right to receive attorney fees and costs. Moreover, a reading of the entire agreement in-

---

[6]The record discloses that the question of arrearages was litigated in the contempt proceeding and that the trial court determined the issue whether the arrearage was waived or compromised by plaintiff and defendant adversely to defendant. Since the court had jurisdiction to do so, there is no merit to the contention that defendant had a constitutional right to have these matters litigated in the declaratory relief action pending between the parties on the subject of their respective rights under the property settlement agreement.

dicates to us that there was also an implied waiver of such fees and costs based upon the expressed statement that the parties intended a full and final settlement of all claims between them as evidenced by the prefatory recital reading in pertinent part that ''the parties hereto desire to settle and adjust for all time all of their property rights and claims and all other rights and liabilities . . .'' and the provision in paragraph XI stating that ''Except as herein provided, each of the parties hereby releases and discharges the other from all claims of every kind or character and all liabilities arising from the marital status, . . .'' (See *Taliaferro* v. *Taliaferro*, *supra*, 200 Cal.App.2d at pp. 197-198.)

That portion of the order and judgment appealed from, which awards attorney's fees and costs to plaintiff's counsel, is reversed. In all other respects the order and judgment appealed from is affirmed. Plaintiff is awarded costs on appeal.

Sims, J., and Elkington, J., concurred.