[Civ. No. 32188. Second Dist., Div. One. July 16, 1970.]

MELVIN B. KORNBLATT, Plaintiff and Respondent, v. CHARLOTTE KORNBLATT, Defendant and Appellant.

## COUNSEL

Joseph W. Fairfield, Ethelyn F. Black and Alfred W. Omansky for Defendant and Appellant.

Christian E. Markey, Jr., and Munger, Tolles, Hills & Rickershauser for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—The parties were formerly husband and wife, the latter having been granted a final judgment of divorce in April of 1960. Thereunder the provisions of the interlocutory decree relating to the support of their three minor children were made binding—payment by the husband (hereinafter referred to as "Melvin") to the wife (hereinafter referred to as "Charlotte") of the sum of $80 per month per child. In addition he was ordered to pay for such support 20 percent of all his net earnings "over and in excess of his average net earnings" for the years 1955 through 1959 to a trustee, one-third of said 20 percent payable for each child at the end of each calendar year commencing January 1, 1960, and continuing each

calendar year thereafter until each of the minor children reached 21, married or became self-supporting. He was also ordered to make his books available to the wife or her attorney or accountant for the ascertainment of such earnings.

In October of 1968, Charlotte moved the court for an order directing Melvin to render an accounting of his earnings and for a determination of the average net thereof for the years 1955 through 1959 and, further, for a determination of his average net earnings for the years following, 20 percent thereof to be applied for the benefit of the three children. Melvin countered with a motion for modification of the above provisions upon the ground of change in circumstances.

Charlotte has appealed from portions of the order directing the modification sought by Melvin after a hearing of both motions. By the portions here challenged, it was determined that circumstances had changed in material part by reason of the following: The oldest child, Cheryl, reached her majority on February 9, 1969; the youngest, Oscar (aged 14), was living with his father, while the second youngest, Brian (aged 18), although in the custody of his mother, was attending a private boarding school where there was a balance due, for lodging and tuition, of $1,700. After finding that Melvin had a net income in 1967 of $22,621 with no evidence that his income for 1968 would be less, the court made this modification of the orders for support: Terminated effective January 1, 1969, were all portions of the interlocutory decree whereunder Melvin was required to make support payments representing 20 percent of his earnings, including the requirement that he make his books available for inspection; commencing September 1, 1969, Melvin was ordered to pay directly to Brian at least $125 per month, "in addition to the amount here-tofore ordered to be paid to the Defendant [Charlotte] for said support," for his college fees and other reasonable expenses at any accredited college within the continenal limits of the United States, such payments to con-tinue while he is so enrolled and until he reaches his majority (in July of 1972). "It was stipulated," according to the order, that Melvin was holding $1,500 "that may be allotted to school costs for Brian" and, accordingly, Melvin was "ordered to apply the accrued proceeds of the said Trust in the sum of $1,500.00, and supplement the same to pay the total balance due" to Brian's private school "in the approximate sum of $1,700.00, pay-able forthwith."

It should be noted, preliminarily, that the original interlocutory decree (comprising some eight pages) was approved, as to form and contents, by

respective counsel neither of whom now represents the parties to this appeal. It further appears that the provisions relating to additional support (20 percent of Melvin's net earnings for the periods in question) require that such sums be paid into a trust under terms to be mutually agreed upon by the parties and, should the parties be unable to agree upon such terms, then to the two attorneys then representing each party to hold for the benefit and use of the three minor children. Apparently no agreement was ever reached during the intervening years as to the terms of the above trust, nor did any trustee ever enter upon the duties of the trust then contemplated. It should also be pointed out that the original decree, in addition to its numerous other adjudications, orders that "an integrated property settlement agreement be prepared and signed" by the parties "in accordance with the terms and provisions of this interlocutory decree." Whether such a property settlement agreement was ever executed becomes germane to Charlotte's first point on appeal.

First she asserts that the court lacked jurisdiction to make any changes in the child support provisions "predicated on a property settlement agreement," citing section 139, Civil Code, as it existed on the date of entry of the interlocutory decree (July 7, 1959). Relied on is the following from *Garrett* v. *Garrett*, 258 Cal.App.2d 407, 417 [65 Cal.Rptr. 580]: "With respect to property settlement agreements entered into before September 18, 1959 where the obligation to pay an agreed amount for child support is made an integral part of a property settlement agreement, the payments are not subject to reduction, but they may be increased by the court if the child's welfare requires it, without regard to what the liabilities of the parties may be . . . ." In that case there was some question as to whether the property settlement agreement was presented to the court for approval; however, not wholly unlike the situation at bar, the decree contained over defendant's signature the statement "Agreed to and approved both as to form and contents." Since this statement was apparently signed prior to the divorce hearing, the reviewing court concluded that it was clearly defendant's intention that the subject provisions be adopted by the trial court "notwithstanding the provisions of the integrated property settlement agreement." (Pp. 418-419.) Except for the slight similarity hereinbefore noted, the cited case does not stand for the sweeping propositions impliedly ascribed to it by certain quotations favorable on their face to the contentions now urged; indeed, the appellate court found against the husband's claim, apposite to that here urged by Charlotte, that the property settlement agreement was integrated and therefore deprived the court of jurisdiction

to enforce collection of the arrearage due,[1] holding that under the circumstances the child support provisions, though identical in terms to those of the settlement agreement, were "law-imposed rather than contractual obligations." (P. 418.)

The *Garrett* case is further distinguishable in that there the property settlement agreement admittedly had been executed, reference to its provisions having been made in the course of the opinion (p. 412); however, in the instant proceeding the purported agreement was never produced and apparently neither party was ever questioned about its existence. In her closing brief, Charlotte endeavors to remedy the situation by mention of a "recent inquiry" of her former attorney which produced the response that such an agreement was executed but for certain stated reasons could not be located. At this stage of the proceedings the statement is sheerest hearsay and further unworthy of our consideration since no reason is given for the failure to produce such evidence at the hearing of the instant motions. Too, there is this further dissimilarity between *Garrett* and the present proceeding. While the formerly properly prohibits *decreases* in child support under appropriate circumstances, here no such *decrease* was ordered for Brian, the only unemancipated child in Charlotte's physical custody. Melvin was ordered to pay at least $125 per month for Brian's college education "in addition to the amount heretofore ordered paid to the Defendant [Charlotte] for said support."

Appellant complains that no evidence of any change of circumstances in Melvin's financial situation was produced at the hearing and, therefore, the court had "no authority to terminate the trust provisions of the interlocutory decree." Such contention, once again, requires reference to what has already been pointed out. The interlocutory decree provided that 20 percent of all net earnings be paid by Melvin to a trustee or trustees as additional child support, the terms of such trust to be mutually agreed upon by both parties.[2] We again repeat that no trustee was ever selected, a condition precedent to any mutual agreement on its terms, nor did the two alternate trustees designated in the decree (the parties' former attorneys) ever enter upon their duties in that regard. Accordingly, while the portions of the order challenged do not expressly so state, the court's action in terminating the so-called "trust provisions" of the decree, effective January 1, 1969, is properly sustainable on the basis of the above considerations viewed in the light of Cheryl's attainment of majority, Melvin's

---

[1]Defendant was not held in contempt, as originally sought, but was ordered to pay such arrearage.

[2]Charlotte's closing brief mentions certain minute orders of April and May 1959 to the effect that the percentage payments were for her benefit as well as the children's; but they antedated the interlocutory decree and were superseded thereby.

custody of Oscar and Brian's enrollment in college. The suggestion is made that Melvin is estopped to adopt the above approach to the problem in view of the fact that he voluntarily put aside certain sums for additional support—thus, he was ordered to apply "the accrued proceeds of the said Trust in the sum of $1,500.00" to the payments of the balance due Brian's private school. Such unilateral action on Melvin's part, however, was subject to Charlotte's subsequent approval in view of the provision requiring "mutual agreement" on its terms; hence, it might have been better had the sum in question ($1,500) been referred to as "the accrued proceeds of the so-called Trust."[3] Indeed, it is a reasonable assumption from the conduct of the matter since the entry of the two decrees and up to and including the hearing on both motions, that the parties would never be able to agree on the use of any trust sums.

As her third point on appeal, Charlotte complains that although her motion, among other things, asked for an accounting of Melvin's earnings for the years 1960 to the date of hearing, upon the rendition of which the 20 percent (above referred to) for the years 1955 through 1959 should be applied for the benefit of the minor children, no ruling was rendered thereon. The point is without merit. It appears that a considerable portion of the hearing was preliminarily devoted to the ways and means of arriving at some base figure on which such net percentage could be predicated. It was finally stipulated that for the years 1967 and 1968 Melvin's earnings were such that "if anything was to be applied to a trust, a figure of $1,500 would be appropriate." The above statement (for the purposes of stipulation) was made by Melvin's counsel, who added: "I think that covers it as to the figures." To this Charlotte's counsel replied: "Except the $1500 is applicable only to Brian." Shortly thereafter, the record reveals the following: "MR. FAIRFIELD [counsel for Charlotte]: In view of the fact we have now determined the amount of his earnings and the basis, I don't think any further testimony is required of the doctor [Melvin]."[4] The statement just quoted reveals that Charlotte obtained what was sought in her motion for an accounting, even though the interlocutory decree made no provision therefor—she was only given the right to inspect Melvin's books and records. Too, the existence of such earnings was noted by the court in the order—a net income in 1967 of $22,621 with no evidence

[3]During his argument, in the closing moments of the hearing, Charlotte's present counsel complained that the pertinent provisions of the decree required Melvin to "make certain contributions to the trust fund for this particular year [1968] and he hasn't even set up a trust fund yet."

[4]In his closing argument, it was also stated by Mr. Fairfield: "The figures as to the doctor's ability have now been established by virtue of the stipulation. I think his earnings for the years of '67 and '68 run approximately 22 or $23,000. We are not going to quibble on $1,000, one way or the other."

that his income for 1968 would be less. True, there was no finding of net income for the earlier years for the obviously implied reason that the court properly terminated the "trust" provisions effective January 1, 1969.

Charlotte also complains of the recital in the order that "It was stipulated that the Plaintiff is holding $1,500.00 that may be allotted to school costs for Brian Jay"; and the subsequent adjudication, pursuant to the above stipulation, that such sum (supplemented by an additional $200) be used to pay the total balance due Brian's school. It is contended that her counsel (unlike Melvin's) did not so stipulate; it is further argued that throughout the entire proceeding she consistently took the position that any of Melvin's surplus income (20 percent net) was for additional child support and not for education. The record does not entirely support the above assertions. Before any evidence was taken, Mr. Fairfield told the court that his client's litigable "items" were twofold: (1) nothing had been done about setting up a trust, and (2) the making of the provision for Brian's college education and for his support. With respect to (1), the trial court correctly resolved that issue for reasons already given. As for (2), Mr. Fairfield told the court that "Brian, who is about to be 18 years of age, is about to enter college and at this particular time we would like to get some very, very firm, solid provisions for his college education and expenses in connection with it and, of course, also the support for him as well." The trial court accommodated Charlotte as to item (2) by ordering Melvin to pay at least $125 per month to Brian for his college expenses in addition to the sum theretofore ordered paid to her individually for his monthly support—by a modifying order several years earlier such amount was increased to $90 per month. Finally, it seems to us that much ado has unnecessarily been made of the effect of the stipulation here criticized, since the sum in question ($1,500) was not limited to educational expenses but was also used for room and board and other items at the school in question. As a matter of fact, it was Melvin's position that the court could not apply the $1,500 to payment of past bills, absent any pleading or proof raising the question. Construing the recital as a finding, not a stipulation, we conclude that no possible prejudice was done Charlotte by the matters here challenged.

 In conclusion, quoting a decision cited by Charlotte, "the justification for such 'order depends on the facts and circumstances of each case'; and the 'propriety of [the] modification rests largely in the discretion of the trial court.' [Citations.]" (*Bratnober* v. *Bratnober,* 48 Cal.2d 259, 262 [309 P.2d 441].) Absent a showing that such discretion was abused, the trial court's action must be sustained.

The portions of the order from which Charlotte has appealed are affirmed.

Wood, P. J., and Thompson, J., concurred.