[Civ. No. 34971. Second Dist., Div. Two. Aug. 4, 1970.]

HELEN CHAMALES, Plaintiff and Appellant, v.
CLIFFORD SMITH, JR., Defendant and Respondent.

**COUNSEL**

Cooper, Nelsen & Moore and Richard M. Moore for Plaintiff and Appellant.

Royal M. Galvin for Defendant and Respondent.

**OPINION**

**FLEMING, J.**—Helen Chamales, former wife of respondent Clifford Smith, Jr., appeals an order denying her motion for reimbursement for court costs

and attorneys' fees in obtaining a stipulated judgment against Smith in New York.

The background. On 7 August 1961 Mrs. Chamales obtained an order in California requiring Smith to pay her $1,500 a month to support their three children plus amounts to cover the children's educational and medical expenses. Smith became delinquent in payments, and in March 1964 Mrs. Chamales obtained a California judgment against him for $16,658.14, plus interest, plus $2,364.15 for attorneys' fees and court costs, plus $1,500 for attorneys' fees to enforce the judgment in New York or some other competent jurisdiction.

A Virginia judgment for this amount was obtained in February 1965.

Meanwhile Smith continued delinquent under the child support order, and in May 1965 Mrs. Chamales obtained another California judgment for arrearages, this one for $18,489.64, plus interest, plus $500 attorneys' fees for services in obtaining this second California judgment.

In January 1966 Mrs. Chamales obtained a third California judgment for arrearages, this time for $25,894.15, plus interest, plus attorneys' fees for $2,604.46 for additional services in connection with the first California judgment and the Virginia judgment, plus $500 attorneys' fees for services in obtaining this third judgment.

Smith failed to pay these judgments, and in April 1966 Mrs. Chamales brought suit for $49,505.54 on the three California judgments in New York (where Smith had assets). Mrs. Chamales paid a New York law firm $1,000 ($500 retainer and $500 costs) and made a contingent fee agreement with it covering amounts to be collected from Smith.

On 9 September 1966 the parties by "Stipulation and Agreement of Settlement" agreed that the sum owing on the three California judgments, after offsetting credits and charges, amounted to $40,836.34 and that judgment could be entered against Smith for that amount in the New York action. Smith agreed to pay Mrs. Chamales through her New York attorneys $1,750 per month, which was to be applied, first, to pay current obligations for child support, and second, to satisfy the judgment to be entered in New York. Under the settlement agreement Smith agreed to pay $270.15 for costs of the New York action, and he further agreed to pay the fees of the Sheriff of New York County for levying an attachment in the action, sheriff's fees which, according to Smith's counsel, amounted to $1,500. The settlement made provision for attorneys' fees in future disputes but provided no such fees in connection with the settlement itself and the stipulated judgment. In due course judgment was entered in the New York action pursuant to the settlement.

More than two years later on 16 September 1968 Mrs. Chamales moved under Civil Code section 137.3 for court costs and attorneys' fees incurred by her in New York and California in the course of obtaining the New York judgment. In its memorandum opinion denying Mrs. Chamales' claim for attorneys' fees the trial court said: "The New York lawyers and the California lawyers worked together with the defendant's lawyers in arriving at the agreement of September 9, 1966. No reference was made to payment of any further attorney fees. When the defendant and his lawyers executed the agreement they were justified in believing that the compromise included all of the defendant's obligations. If the parties had contemplated payment of attorney fees, procedures were available to them for approval or rejection by the court. The item of attorney fees was specifically omitted from the agreement, and it is reasonable to believe that all sides being represented by knowledgeable lawyers did not intend to hold the defendant liable for further attorney fees. . . . The [contingent] fee arrangement was made with the plaintiff on November 25, 1965, so that it was a known item at the time the parties concluded the negotiations and the eventual execution of the agreement."

The only evidence whether the agreement of 9 September 1966 settled all pending claims for costs and attorneys' fees arising out of child support, is found in the agreement itself and in the statements of counsel. Mrs. Chamales' California attorney testified: "We had asked our New York lawyers to negotiate the matter of attorneys' fees with them, and the lawyers informed me—I don't know what went on between them directly—but the lawyers informed me that they would not agree to the matter of attorney's fees. So we instructed the New York counsel, 'Well, we won't enter into the stipulation if it precludes recovery of attorney's fees in California.' " Smith's New York attorney made a declaration that he had refused to agree to Mrs. Chamales' request for attorneys' fees at the time of the settlement. ■ Thus both parties agreed that at the time of the negotiations for settlement Smith refused to agree to pay additional attorneys' fees. Yet the stipulation had been executed. We think this sequence of events supports the trial court's conclusion that the parties intended not to seek additional attorneys' fees in connection with the settlement and stipulated judgment. The fact that the agreement specified payment by Smith of costs and sheriff's fees in the pending New York action but was silent on attorneys' fees raises an inference that Smith's liability for the expenses of the litigation would not extend beyond the two specified items. ■ Settlement is favored in the law, and accord and satisfaction is presumed to cover all controversies between the parties which directly relate to the subject matter of the settlement. The agreement of 9 September 1966 specified in great detail the amount and enforcement of past, present, and future in-

debtedness under the child support order, and made elaborate provision for costs and attorneys' fees in future disputes. Since at the time of their agreement the parties were well aware of the pending claim for attorneys' fees, their failure to except the claim from the scope of the agreement and reserve it for future determination suggests that they intended to forego it.

■ The trial court's order receives further support from plaintiff's failure to apply for attorneys' fees until two years after the date of the settlement. By then the children had become emancipated, the obligation for child support had terminated, and the back payments had been all but liquidated. The trial court might well have concluded that the belated application for further attorneys' fees was an afterthought designed to pump a final barrel of oil out of a well about to go dry.

Even if the agreement should be construed as one which did not waive additional costs and attorneys' fees the trial court's ruling must stand. ■ An award of costs and attorneys' fees under section 137.3 rests in the sound discretion of the trial court, and the denial of an award will not be upset on appeal absent a clear showing of abuse of discretion. (*Rosenthal* v. *Rosenthal,* 240 Cal.App.2d 927, 934 [50 Cal.Rptr. 385]; *Simrin* v. *Simrin,* 233 Cal.App.2d 90, 94 [43 Cal.Rptr. 376].) The California court had already awarded Mrs. Chamales $1,500 for attorneys' fees with which to enforce the California judgment by an action in New York or some other jurisdiction. The California court had also awarded attorneys' fees in connection with child support in four other instances. In exercising its discretion on the current application the trial court could have reasonably concluded that five awards for attorneys' fees were enough.

Finally, appellant contends there was no effective agreement to waive attorneys' fees because she lacked authority to make such an agreement. The right to support does not belong to the mother but belongs to the children, and, appellant argues, since a mother cannot waive her children's right to support, by extension she cannot waive their right to attorneys' fees incident to support. ■ We find this argument stultifying, because here the mother acted as custodian, fiscal agent, and attorney in fact for minor children who were legally incapable of acting for themselves. Patently, she took to herself, as she was entitled to do, the entire responsibility for the collection and disbursement of money allocated for the support of the children. We think it self-evident that in doing this she had full authority both to settle claims for unpaid child support and to settle claims for attorneys' fees incident thereto. Cases cited by appellant, *Krog* v. *Krog,* 32 Cal.2d 812, 817 [198 P.2d 510], and *Allen* v. *Allen,* 138 Cal.App.2d 706, 710-711 [292 P.2d 581], relate to settlement and waiver of children's future rights to support, an entirely different matter from settlement of

obligations past due. (Cf. *Garrett* v. *Garrett,* 258 Cal.App.2d 407 [65 Cal.Rptr. 580].)

The order is affirmed.

Roth, P. J., and Herndon, J., concurred.