[Civ. No. 35180. Second Dist., Div. Four. June 18, 1970.]

JEAN I. BARBER, Plaintiff and Appellant, v.
ROBERT J. BARBER, Defendant and Respondent.

**COUNSEL**

Barsam & LeVeque and Thomas B. Barsam for Plaintiff and Appellant.

Mack, Nast & Boss and Thomas Nast for Defendant and Respondent.

## Opinion

**KINGSLEY, J.**—Plaintiff wife appeals from an order reducing an earlier order for alimony and denying her request for attorney fees in resisting that order. For the reasons set forth below, we reverse the order in both particulars.

The parties were married in 1952; they separated on February 2, 1966; they had one child—a son—born in March of 1956. On October 15, 1966, they entered into a "Marital Property Settlement Agreement," under which it was agreed that the wife should have custody of the son, with support for him at the rate of $150 per month, and that she should receive alimony at the rate of $200 per month, "continuing until further order of court." The agreement also provided, in subparagraph 6 of paragraph I: "This Agreement is entire. It may not be altered, amended, or modified, save by an instrument in writing executed by the parties hereto. This Agreement shall be binding upon and inure to the benefit of, as the case may be or require, the parties hereto, their heirs, legatees, devisees, assignees, administrators, executors and successors in interest." But it also provided in paragraph XII: "Husband and Wife hereby agree that this Agreement is to be submitted to the Court in any and all actions for divorce by either party against the other for the approval of the Court, but this Agreement shall not depend for its effectiveness upon such approval, nor shall it be affected thereby."

On April 10, 1968, the wife filed her complaint for divorce, in which she prayed for child custody, child support, alimony and "That the Marital Property Settlement Agreement entered into on October 15, 1966, be approved and each party be ordered to perform all conditions and covenants on their part to be performed." The husband defaulted; on July 29, 1968, the wife was granted an interlocutory decree of divorce, which granted custody and ordered child support and alimony in accordance with the terms of the 1966 agreement. The decree concluded as follows: "It Is Further Adjudged that the Marital Property Settlement Agreement entered into by and between the parties hereto on October 15, 1966, is approved, and that the above orders are made pursuant to said Marital Property Settlement Agreement."

On January 14, 1969, the husband filed his request for a reduction in the alimony payments, basing his claim on the fact that the wife, at the time of the agreement had been employed only part-time, whereas at the date of the interlocutory decree and since, she was employed full-time.[1] The wife

---

[1] As drafted, the husband's declaration in support of his motion seemed to allege that he had been ignorant of the 1966 employment. But, at the hearing, it was frankly admitted that this was an error in drafting and that he had known of the part-time employment and at least its approximate amount.

countered with a motion for attorney fees to resist the husband's application. After a hearing, at which the declarations of the parties were introduced and each party testified, the court made its order, as follows: "The matter having been taken under submission March 4, 1969, the Court now makes its decision and enters the following order:

The Court finds that: 1. The parties' net monthly income was and is as follows:

| Time | Plaintiff | Defendant |
| --- | --- | --- |
| Oct. 15, 1966 (date of property settlement agreement) | $ 96.00 | $754.00 |
| July 30, 1968 (date of entry of Interlocutory judgment) | $515.00 | $789.00 |
| March 4, 1969 (date of modification hearing) | $453.00 | $908.00 |

2. Defendant knew, not later than March 1, 1968, that plaintiff was employed full time, as compared with her part-time employment in October, 1966.

"The Court concludes that:

1. By paragraph I of said property settlement agreement, the parties intended that plaintiff waive any right to claim attorney fees and court costs for herself in future legal proceedings, but not with respect to child support. NEWHALL V. NEWHALL, 157 Cal.App.2d 786, 796-797 (1958).

"2. The order set forth below should be made.

IT IS ORDERED that the Interlocutory Judgment of Divorce entered July 30, 1968, is modified in the following particulars only:

1. Defendant shall pay to plaintiff as alimony $120 per month, payable $60 on the 1st and 15th of each month, commencing March 15, 1969, decreasing to $100 per month, payable $50 as aforesaid beginning August 1, 1969, and continuing until plaintiff dies, remarries, or further order of the court, or August 1, 1972, whichever occurs first.

"IT IS FURTHER ORDERED that:

2. Plaintiff's motion for attorney fees and court costs is denied."

We reverse that order.

I

The husband's theory, as we have indicated, is that the wife, at the time the agreement was executed, was earning only $96 per month in her

part-time employment as a student nurse; that she became a full-time licensed vocational nurse in the spring of 1968, but that she had not advised the divorce court of that fact.

Although the husband concedes that a modification of alimony may be based only on a showing of a change in circumstances, he argues that the "change" should be measured from the date of the agreement in 1966, and not from the date of the interlocutory decree. As the economic facts found by the court, and above quoted, show, the beginning date is here vital. The wife's income has increased by $357 from 1966, but has decreased $62 from 1968, whereas the husband's income has shown a steady increase—amounting to $154 from 1966 and $119 from 1968.[2]

The briefs do not cite, and our research has not discovered, any cases directly in point on the issue thus presented. The husband cites us to the language of various cases, of which the following quotation from *Molema* v. *Molema* (1930) 103 Cal.App. 79, 82 [283 P. 956], is typical: "The principle of law involved is that when a court has once acted *after hearing the merits of a controversy* the action cannot be set aside or modified in matters of substance except upon legal grounds and that, when the code section authorizes the court to modify its orders for alimony, it contemplates a legal showing 'having regard to the circumstances of the parties respectively.' " (Italics added.) We do not think that that language compels, or even impels, the result the husband urges. It is not suggested that the wife concealed her employment status from the court that granted her divorce— the record shows merely that she was never asked about it. The husband admitted that he had known, for several months prior to the divorce hearing, that the wife was employed full-time, although he did not know the exact amount of her earnings; the complaint served on him expressly showed that the agreement would—as its terms expressly required—be submitted to the court for approval; he had made payments in the amounts prescribed by the agreement and the decree for six months, without questioning their propriety. The interlocutory decree impliedly found that, as of its date, the orders then made, were proper in amount. We cannot permit a party who,

---

[2]There is no major issue over increase in need. The husband elected not to file a declaration of his expenses at any date, so that the trial court, properly, ruled that it could look only at the reasonableness on other grounds. The wife's declaration shows a "need" slightly in excess of her then income ($12 per month) but the testimony suggests that the two sides probably were about in balance. However, she alleged and testified (without contradiction) that an older son, by a previous marriage, who had been available as a sitter while she worked, was now in the military service, so that her continued full-time employment would require an additional $75 to $100 per month for a hired sitter. Since she did not pray for an increase in either child support or alimony, these factors are important only in indicating that the modification appealed from cannot be sustained on any theory that the "need" factor had changed. (We consider later the significance of this data on the attorney fee application.)

with full knowledge of the terms of an order that will be made against him, elects to default and to allow a court to make a finding—on whatever testimony that court deems necessary—to come into court later and say that, had he elected to appear, defend and testify, he *might* have secured a more favorable result. Absent some extrinsic fraud,[3] the decree is conclusive that the order when made was a proper order as of that date; the "change of circumstances" dates from that order. As the husband here admits, if the issue is a change since July of 1968, the order is without support.

## II

■ The trial court based its denial of attorney fees on the language of subparagraph 3 of paragraph I of the agreement. That subparagraph reads as follows: "3) In consideration of this Agreement, each party hereto releases and forever discharges the other party, his or her heirs, executors, administrators, assigns, property and estate from any and all rights, claims, demands and obligations of every kind and nature, for community property, homestead, dower, curtesy, inheritance, family allowance, letters of administration, descent, and distribution, and each party is forever barred from having or asserting any such right, claim, demand or obligation at any time hereafter for any purpose, except as may be provided by this Agreement or except as may be provided by Will or Codicil executed after the date of this Agreement. Except as may herein to the contrary be provided, the parties hereto shall and do hereby mutually release, remise and forever discharge the other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, (except causes of action for divorce), which either of them ever had, now has, or may hereafter acquire against the other upon or by reason of any matter, cause or thing up to the date of the execution of this Agreement." We do not read the provision as prohibiting a court-ordered attorney fee under the circumstances of this case. The paragraph in question expressly deals with two groups of possible claims: (1) those involving "community property, homestead, dower, curtesy, inheritance, family allowance, letters of administration, descent, and distribution"; and (2) claims "up to the date of" the agreement. Obviously, a prayer for attorney fees in 1968 is not within the second group; equally obvious, the matter of attorney fees is not within the group of economic rights carefully spelled out in the first group. We cannot read a waiver clause, which expressly restricts itself to specified claims, as barring a wife from seeking fees to enable her to resist an attack on her rights under the agreement and under an interlocutory decree. If the husband had desired to be

---

[3]As we have pointed out, the evidence produced by the husband does not rise to the level of even intrinsic fraud, much less extrinsic.

free to attack his wife's rights, at her expense, he should have seen to it that the settlement agreement expressly spelled out such an unusual result.

Since the trial court held that the wife was barred from seeking attorney fees, it never reached the merits of her request. We point out, merely, that the data in the record as to her income and expenses, present and future, would have supported an award in some amount. Since the statute permits a request for fees for services already rendered,[4] she is also free to apply, on remand, for fees for services on this appeal as well as for those in any further trial court hearing.

The order is reversed; the case is remanded for further proceedings consistent with this opinion.

Jefferson, Acting P. J., and Dunn, J., concurred.

---

[4]Civil Code section 4525; formerly Civil Code section 137.